GILLETTE, Plaintiff, v. BROOKHART et, Defendants.

Common Pleas Court, Mercer County.

No. 14286.   Decided August 11, 1954.

494

David M. Myers, Celina, for plaintiff.
Don W. Montgomery, Celina, K. B. Cope, Canton, for defendants.

## OPINION

By DULL, J.

The demurrer of the defendant lessor to the amended petition of the plaintiff lessee based on the grounds that it allegedly does not state facts sufficient to constitute a cause of action was submitted to the court upon the memorandum of counsel for the defendant lessor and the later oral arguments of counsel for the plaintiff lessee and of counsel for the defendant lessor.

The amended petition of the plaintiff lessee omitting the caption, jurat and signatures reads as follows:

"Plaintiff says defendants, Dora M. Brookhart and The National Bank of Lima are the duly appointed, qualified and acting executors of the estate of E. J. Brookhart, deceased, having been appointed as such on the 15th day of August, 1950, by the Probate Court of Mercer County, Ohio.

"That on the 13th day of December, 1950, being within four months after the appointment of the executors, plaintiff presented to Dora M. Brookhart, one of such executors, plaintiff's claim in writing.

"That on the 19th day of December, 1950, said claim was rejected by said Dora M. Brookhart and The National Bank of Lima as executors of said estate.

"And now, within two (2) months after the date of rejection of said claim plaintiff brings this his action on the said claim."

Plaintiff says that on or about the 24th day of August, 1949, he and E. J. Brookhart, deceased, entered into a contract regarding the farms owned by E. J. Brookhart, deceased, which contract states in part:

"It is understood that this lease shall be automatically renewed from year to year but may be terminated at any time by mutual consent by either party giving to the other ninety days written notice of his intention to terminate said contract on the following March 1st or anniversary date of said lease."

That the defendants did avail themselves of this part of the contract and the plaintiff has vacated the farms which were the subjects of the contract.

The contract further states:

"It is understood and agreed that it is the intention of the parties hereto to build up a commercial dairy herd."

The contract further states:

"If the lessee shall fail to perform the labor or exercise the care agreed upon the (to) such an extent as to threaten or cause serious injury to crops, stock or farm, the lessor shall have the right to re-enter and take full possession of the farm, and the lessee shall peaceably vacate the premises. The differences between the two parties shall be deferred to a board of three arbitrators, one to be chosen by each party and the third by these two. The decision of these arbitrators shall be final and binding upon the parties to this contract."

The contract further states:

"Upon the termination of this lease, all partnership property shall be sold at public aution or private sale, or otherwise disposed of as agreed between the partners."

496

The contract further states:

"If the lessee shall die during the term of this lease, the lessor shall have the right to take possession of said premises, to employ such labor as may be necessary to perform the work which the lessee should have performed, deduct the cost of such labor from the lessee's interest in the crops and livestock, or from the proceeds to be derived from their sale, and pay the balance to the representatives of said lessee.

"Plaintiff says that pursuant to the terms of the contract which states the purpose of the contract was to build up a commercial dairy herd, that he did expend sums of money for stock and equipment to be used for a number of years as was the intention of the parties; that it was understood that there would be a loss in the operation for the first few years but that thereafter a substantial profit would be made each year; that unfortunately Mr. E. J. Brookhart passed away and the executors of his estate saw fit to disregard and did not fulfil the agreement and intentions of E. J. Brookhart, deceased. That the plaintiff was informed by the defendant, Dora M. Brookhart, that he was failing to perform labor and was not exercising proper care; that she even was afraid of his doing damage to the land and property; that he was then served with a notice to vacate the premises which he did. The defendants failed to present the differences to a board of three (3) arbitrators pursuant to the terms of the contract.

"Plaintiff says that because of the failure of the executors to faithfully fulfil and perform the contract entered into by E. J. Brookhart, deceased, and plaintiff; that he has been damaged in the amount of seven thousand, eight hundred ($7,800.00) dollars.

"Plaintiff says that said claim is justly due and that no payments have been made thereon, but that there is a set-off in the amount of two thousand eight hundred thirty seven dollars and fifty cents ($2837.50), which amount plaintiff was indebted to E. J. Brookhart, deceased, which leaves a balance of $4962.50 still due this plaintiff.

"Wherefore, plaintiff prays judgment against the defendants in the amount of $4962.50 and for all other relief as is proper at law or in equity."

It has long been accepted that a demurrer searches the record and admits facts that are well pleaded.

"A demurrer to a petition attacks it for defects appearing on its face; where it attacks the petition on the ground that it does not state a cause of action, it raises the question whether, assuming that the facts pleaded are true, they are sufficient in law to show a cause of action in favor of the plaintiff against the defendant. The court in passing upon the demurer has no right to go outside of the petition for information, but must rely wholly and entirely upon the language used therein." 31 O. Jur., p. 702.

Further, "In the interpretation of a contract the document is construed strictly against the person who prepared it, and favorably to the person who had no voice in the selection of the language. It is presumed that one using words, uses those most favorable to his interest and therefore all doubtful terms or ambiguous words are to be construed against him." Vol. 9 O. Jur., pages 429 and 430. The deceased lessor in this case was an attorney, corporation executive and a landord for many years. The lessee

is a tenant farmer of, presumably, average intelligence, education and experience.

"It is elementary that every cause of action must contain two factors: First, plaintiff's primary right and defendant's corresponding primary duty; second, the wrongful act or omission of the defendant by which such primary right and duty have been violated, and the material facts only which constitute such primary right and duty and the wrongful act or omission, violative thereof need be alleged." **Vol. 9, O. Jur. page 609.**

From a careful study of the amended petition of the plaintiff lessee, the court finds two alleged primary rights of the plaintiff lessee and two alleged primary duties of the defendant lessor which the defendant lessor is alleged to have failed to perform or violated.

The two alleged primary rights of the plaintiff lessee being: (1) the plaintiff lessee had the right to have the defendant lessor fulfill or carry out the provisions and intentions of the parties to the contract and (2) the plaintiff lessee had the right to submit to three arbitrators any differences arising between the plaintiff lessee and the defendant lessor in case the defendant lessor charged the plaintiff lessee with failure to perform.

The two alleged primary duties of the defendant lessor which the defendant lessor is alleged to have failed to perform or violated are: (1) the defendant lessor had the duty to fulfill or carry out the provisions and intentions of the parties to the contract and (2) the defendant lessor had the duty to submit to three arbitrators any differences arising between the plaintiff lessee and the defendant lessor in case the defendant lessor charged the plaintiff lessee with failure to perform.

The second right of the plaintiff lessee and the second duty of the defendant lessor will be considered first.

The court views this action as one for breach of contract.

"The bringing of an action for breach of contract constitutes a waiver on the part of the plaintiff of his right to arbitration under an agreement therefor within the scope of the Ohio Arbitration Act." **Vol 4, O. Jur. 2d page 662.**

Further, "The plaintiff had a right to arbitration. It waived such right by bringing the action. The defendant construction company had the right to arbitration. It waived such right by answering and making no defense on this basis and proceeding through the trial to verdict without availing itself of the rights under the contract or statute. It met the issue of defective workmanship and breach of contract squarely. The case was tried by all parties on the basis that the breach of the contract was the issue. It is now too late to raise a different issue. The record shows no other presented." **Board of Education of Addyston Village School District v. Nolte Tillar Bros. Construction Co., Inc., Volume 71 Oh Ap 476.**

Hence, it is the considered opinion of the court that although the plaintiff lessee had a right to arbitrate and the defendant lessor had a corresponding duty, the plaintiff lessee by bringing this action waived such right. Consequently, if the right is waived, the failure of the defendant lessor to perform cannot be the basis of an action for breach of contract.

This leaves the first right of the plaintiff lessee and the first duty of the defendant lessor to be considered. Such right and such duty as al-

leged in the amended petition are broken down into two parts: (a) the right of the plaintiff lessee to have the defendant lessor fulfill or carry out (1) the provisions and (2) the intentions of the parties to the contract; (b) the duty of the defendant lessor to fulfill or carry out (1) the provisions and (2) the intentions of the parties to the contract.

The contract contains three pertinent provisions of termination:

"If the lessee shall fail to perform the labor or exercise the care agreed upon the (to) such an extent as to threaten or cause serious injury to crops, stock or farm, the lessor shall have the right to re-enter and take full possession of the farm, and the lessee shall peaceably vacate the premises. The differences between the two parties shall be deferred to a board of three arbitrators, one to be chosen by each party and the third by these two. The decision of these arbitrators shall be final and binding upon the parties to this contract.

It is understood that this lease shall be automatically renewed from year to year but may be terminated at any time by mutual consent or by either party giving to the other ninety days written notice of his intention to terminate said contract on the following March 1st or anniversary date of said lease.

Upon the termination of this lease, all partnership property shall be sold at public auction or private sale, or otherwise disposed of as agreed between the partners."

The first provision gives the defendant lessor the right to terminate for cause with no notice to the plaintiff lessee and is coupled with the already-passed-upon right to arbitrate.

Although the plaintiff lessee alleges in his amended petition that he was informed by the defendant lessor that the defendant lessor was terminating the contract for cause, the plaintiff lessee also alleges that he was given notice according to the second provision for termination open to either party to the contract.

Hence it is the second provision for terminataion that is to be considered.

The syllabus of **Ferguson v. Buddenberg, 57 Abs 473,** states:

"Where a tenant, upon request and notice to vacate voluntarily abandons premises rented from week to week, without protest, no action for damages against the landlord, based on fraud or misrepresentations as to reasons for such request to vacate can be maintained under rights recognized by the common law or the Federal Housing and Rent Act, or any statute of Ohio."

On page 474 of the opinion, the court states:

"To permit the maintenance of the present action would open the door wide to a recourse to the courts, whenever after voluntary change of quarters, the vacating tenant discovered that the landlord had rented such vacated quarters for an additional amount.

If the plaintiff had any rights in the premises. he voluntarily released and waived such rights by vacating the premises without protest."

Further, **par 8** of the syllabus of **Green Bay Auto Distributors, Inc. v. Willys-Overland Motors, Inc., 63 Abs page 515,** states:

"A provision in a contract between a manufacturer and a distributor of goods giving either party the right to cancel and terminate the contract

at any time by giving 30 days written notice to the other party, gives an unqualified right to cancel such contract according to its terms without incurring liability for doing so."

On page 529 of the opinion. the court states:

"In the instant case it is clear that Martin's dealership was to continue no longer than either he or the Ford Motor Company desired it to continue and that its right to terminate it was subject to no conditions as to good or bad faith, motive, intent, or results, except as to the requirement of advance notice if such termination was desired by the Ford Motor Company."

The plaintiff lessee alleges that notice to terminate was given to him by defendant lessor according to the second provision for termination. Further, the plaintiff lessee does not allege in his petition that the third provision for the disposal of partnership property in case of termination was not fulfilled or carried out. The defendant lessee in his memorandum states that such provision was fulfilled or carried out. At the oral hearing on the demurrer, this was not disputed by the plaintiff lessee.

Hence, it is the considered opinion of the court that the right of the plaintiff lessee to have the defendant lessor fulfill or carry out the second provision for termination of the contract has not been violated by the defendant lessor, nor has the defendant lessor failed to perform any corresponding duty.

The plaintiff lessee in his amended petition alleges:

"The contract further states:

"It is understood and agreed that it is the intention of the parties hereto to build up a commercial dairy herd."

The plaintiff lessee in his amended petition further alleges:

"Plaintiff says that pursuant to the terms of the contract which states the purpose of the contract was to build up a commercial dairy herd, that he did expend sums of money for stock and equipment to be used for a number of years as was the intention of the parties; that it was understood that there would be a loss in the operation for the first few years but that thereafter a substantial profit would be made each year"

**Par.** 1 and 2 of the syllabus of **Blosser v. Enderlin, 113 Oh St 121,** states:

"1. The agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof.

2. Except where the reformation of a written contract is sought in equity, evidence can not be introduced to show an agreement between the parties materially different from that expressed by clear and unambiguous language of the instrument."

**Gurtler, d. b. a. W. A. Gurtler & Co., v. Kauer, Dir., et al, 92 Oh Ap 125,** of the opinion states:

"The intent of the parties controls in the interpretation of the contract and the intention must be gathered from the language employed."

The language of the contract itself relative to the intentions of the parties is clear and unambiguous. They intended to build a commercial enterprise. Such entails the expenditure of time, effort. thought and money—among other things. Fortunately, in this country, profit is still the underlying motive in all such undertakings. As to when a profit can be

realized is always a matter of many diverse factors only a few of which can be foreseen or provided for. In the instant case, some factors were provided for; others were not.

The plaintiff lessee in his amended petition alleges that during the term the contract was in force the original lessor died. There is a provision in the contract as to the specific steps to be taken in the event the lessee died, but none as to the specific steps to be taken in the event of the lessor's death. Perhaps it was an oversight. Certainly it is unfortunate.

The plaintiff lessee does not allege that during the term in which the contract was in force the defendant lessor did anything to prevent, or failed to do anything necessary to, the building up of a commercial dairy herd. The plaintiff lessee does not allege any fraud, illegality or bad faith on the part of the defendant lessor.

Paragraph 9 of the syllabus of Green Bay Auto Distributors, Inc. v. Willys-Overland Motors, Inc., citation supra, states:

"The function of a court is to interpret and enforce contracts not to make or extend them."

On page 530 of the opinion the court states:

"And while, as we said in the Kirkmeyer (Kirkmyer) Case, there is a natural impulse to be impatient with the form of contract which places the comparatively helpless dealer at the mercy of the manufacturer, we do not make the contracts for the parties, and we cannot protect them against lawful agreements and conditions which they may see fit to make for themselves. * * * Our function is to interpret and enforce contracts, not to make or extend them."

The syllabus of Ullman v. May 147 Oh St 468, states:

"(1) Where a written agreement is plain and unambiguous it does not become ambiguous by reason of the fact that in its operation it will work a hardship on one of the parties thereto and corresponding advantage to the other. (Ohio Crane Co. v. Hicks, 110 Oh St 168, approved and followed.)

(2) Courts do not relieve a party competent to contract from an improvident agreement in the absence of fraud or bad faith.

(3) A person competent to contract who, pursuant to a written agreement with another has performed services, is entitled to compensation therefor only in accordance with the terms of such bargain, in the absence of fraud, illegality or bad faith.

(4) In the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return."

The contract of employment in last cited case too contained a provision that it could be terminated by either of the parties upon giving to the other party not less than seven days' written notice of the intention to cancel.

Hence, it is the considered opinion of the court that the right of the plaintiff lessee to have the defendant lessor fulfill or carry out the intentions of the parties to the contract has not been violated by the defendant lessor, nor has the defendant lessor failed to perform any corresponding duty.

Therefore, the demurrer of the defendant lessor to the amended petition of the plaintiff lessee is sustained.

Exceptions to this ruling are granted to the plaintiff lessee.