**JAMES JULIAN, INC., a Corporation of the State of Delaware, Plaintiff,**

v.

**RAYTHEON SERVICE COMPANY, a Corporation of the State of Delaware, Defendant.**

Court of Chancery of Delaware, Kent County.

Submitted Sept. 24, 1980.

Decided Dec. 9, 1980.

John Van Brunt, Jr., Wilmington, and Edward J. O'Malley, of Pelino & Lentz, Philadelphia, Pa., for plaintiff.

Edmund N. Carpenter, II, and Richard J. Abrams, of Richards, Layton & Finger, Wilmington, for defendant.

HARTNETT, Vice Chancellor.

Pursuant to 10 *Del.C.*, Ch. 57 (the Uniform Arbitration Act), plaintiff, James Julian, Inc. ("Julian"), filed this suit to compel defendant, Raytheon Service Company ("Raytheon Service"), to arbitrate disputes arising out of an agreement between the parties relating to the construction of a solid waste processing and recovery plant. Raytheon Service then moved to have this action dismissed or—in the alternative—stayed. For the reasons stated, I find that the dispute is arbitrable but the arbitration proceedings must be stayed pending the disposition of an antitrust action filed by Julian against Raytheon Service and others in the U.S. District Court.

I

Under an agreement with the Delaware Solid Waste Authority, dated August 10, 1979, Raytheon Service became the prime contractor for the design and construction of a solid waste processing and recovery plant at Pigeon Point, Delaware. Subsequently—pursuant to a subcontract with Raytheon Service—Julian became the prime subcontractor. Under the contracts, Raytheon Service was to perform design work for both the sludge and solid waste processing modules and Julian was to perform major portions of the construction work on the solid waste processing module. The Subcontract provides for arbitration of any controversy or claim arising out of or relating to the Subcontract.

Following commencement of the work by Julian, labor picketing and violence led to interruption, delays, and damages at the module construction site. Although there is a conflict as to the extent of each party's fulfillment of its contractual obligations, in December of 1979 Raytheon Service notified Julian that the Subcontract between them was terminated pursuant to Article 10(B) of the Subcontract which provides for termination in the case of a default.

In response to this notification of termination, Julian, on January 4, 1980, filed a Demand For Arbitration against Raytheon Service with the American Arbitration Association alleging an improper termination of the Subcontract and seeking certain payments purportedly due under the Subcontract. Raytheon Service took the position with the American Arbitration Association that this dispute was not arbitrable and no arbitration took place.

On January 18, 1980, Julian filed a complaint in the U.S. District Court for the District of Delaware against Raytheon Service and others alleging violations of the federal antitrust statute and seeking damages for the wrongful termination of the Subcontract between Julian and Raytheon Service.

On February 26, 1980, Julian filed this suit seeking to compel Raytheon Service to proceed to arbitration in accordance with the arbitration clause of the Subcontract. In response, Raytheon Service claims that the dispute is not subject to arbitration and that in any case the filing of the federal antitrust action by Julian acted as a waiver or stay of any right to arbitration.

II

First to be considered is Raytheon Service's contention that the termination was

at the convenience of Raytheon Service in accordance with Article 10(A) of the Subcontract and therefore there is no issue relating to termination to be arbitrated. Article 10(A) states, in part:

"A. Termination for Convenience

(This clause applies to all terminations not made pursuant to the clause herein entitled Termination for Default).

1. The performance of work under this Contract may be terminated by the Company in accordance with this clause in whole, or from time to time in part, whenever the Company shall determine that such termination is in the best interest of the Company. Any termination shall be effected by delivery to the Contractor of a Notice of Termination notifying the extent to which performance of work under this Contract is terminated, and the date upon which such termination becomes effective."

The notice of termination, however, stated that it was for cause pursuant to Article 10(B) of the Subcontract. Raytheon Service contends, in the alternative, that if the termination is held to be without justifiable cause it would then be a termination for convenience pursuant to Article 10(A) and that if the termination was for convenience there would be no issue relating to termination to be arbitrated. It is clear, however, that a dispute exists whether the Subcontract was terminated pursuant to Article 10(A) which purports to grant Raytheon Service the right to terminate the contract at its convenience or whether it was terminated pursuant to Article 10(B) which provides for termination for cause. There is also a dispute as to the legal meaning of the language set forth in brackets in Article 10(A) of the Subcontract, quoted above, since that language is ambiguous. And there is a dispute as to the amount of money owed to Julian regardless of the reason for the termination.

■ As previously noted, the Subcontract included a broad arbitration provision which stated, in part: "any controversy or claim ... arising out of or relating to this Contract ... shall be settled by arbitration ...". The scope of an arbitration agreement is ordinarily determined by the Arbitrator and not by a Court. *Warren Bros. Co. v. Cardi Corp.*, 1st Cir., 471 F.2d 1304 (1973); *Lodge No. 12, Dist. No. 37, Int'l Ass'n of Machinists v. Cameron Iron Works, Inc.*, 5th Cir., 292 F.2d 112, 118–119 (1961); *Youmans v. Dist. Ct. in & for County of Denver*, Colo.Supr., 589 P.2d 487 (1979). All doubts as to the arbitrability of an issue must be resolved in favor of arbitration. *McCandliss v. Ward W. Ross, Inc.*, Mich.Ct. App., 45 Mich.App. 342, 206 N.W.2d 455 (1973); *Intern. Bro. of Team. Local 959 v. King*, Alaska Supr., 572 P.2d 1168 (1977); *Sewer v. Paragon Homes, Inc.*, D.C.V.I., 351 F.Supp. 596 (1972).

■ The disputed issues arising out of the termination of the Subcontract, therefore, should be submitted to arbitration if there has been no waiver of the right to arbitration or if there is no reason for a stay of the arbitration.

### III

Raytheon Service next contends that Julian has waived any right to arbitration by its initiation of a lawsuit in the U.S. District Court which alleged federal antitrust violations and included breach of contract issues and therefore encompasses the same issues as would be before the Arbitrator.

■ Both parties recognize that claims arising under the federal antitrust laws are of a character which are not appropriate for enforcement by arbitration. *Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 2nd Cir., 391 F.2d 821, 825–827 (1968); *Applied Digital Tech., Inc. v. Continental Cas. Co.*, 7th Cir., 576 F.2d 116, 117 (1978); *Cobb v. Lewis*, 5th Cir., 488 F.2d 41 (1974). Both parties, therefore, concede that the antitrust issues must be decided only in a Federal Court. Julian argues, however, that the antitrust issues are different from the breach of contract issues and therefore both the arbitration and the federal district court suit may proceed simultaneously as to the different issues. Whether the issues which are before the District Court and the

issues which would be before the Arbitrator are the same is difficult to determine at this preliminary stage. Nevertheless, it is clear that a binding waiver of the right to arbitration has not occurred. There is a strong public policy favoring arbitration and, therefore, waiver is not to be lightly inferred. *City of Wilmington v. Wilmington Firefighters*, Del.Supr., 385 A.2d 720, 724 (1978); *Pettinaro Const. Co. v. Harry C. Partridge, etc.*, Del.Ch., 408 A.2d 957, 961 (1979); *Carcich v. Rederi A/B Nordie*, 2nd Cir., 389 F.2d 692 (1968). "Waiver of arbitration is a matter of intention and to constitute a waiver there must be an intentional relinquishment of a right with both knowledge of its existence and intention to relinquish it." 6 C.J.S. *Arbitration* § 37, p. 224 (1975); 5 Am.Jur.2d, *Arbitration* § 51, p. 556 (1962). No waiver will be inferred simply because a party does not rely exclusively on the arbitration provisions in a contract. *Germany v. River Terminal Railway Co.*, 6th Cir., 477 F.2d 546 (1973).

Raytheon Service cites several cases in support of its claim that Julian has waived its right to arbitrate: *Cornell & Co. v. Barber & Ross Co.*, D.C.Cir., 360 F.2d 512 (1966); *Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co.*, 7th Cir., 128 F.2d 411 (1942); and *Gillette v. Brookhart*, Ohio Ct. C.P., 123 N.E.2d 693 (1954). In each of these cases, however, unlike the present case, a plaintiff commenced suit first in a court and then sought arbitration. In the present case Julian filed its demand for arbitration before it filed its complaint in Federal Court. The time sequence followed by Julian, therefore, does not indicate an intention by Julian to waive its right to arbitration, but rather indicates a desire to preserve that right.

 As previously shown, the issues arising out of the termination of the Subcontract are arbitrable and I find that Julian did not waive its right to arbitration of them. This action, therefore, cannot be dismissed at this time.

## IV

Finally, Raytheon Service argues that the federal antitrust issues and the breach of contract issues are so interwoven that the Arbitrator could not decide the contract issues without necessarily determining the antitrust issues. And therefore the facts relating to the breach of contract issues so permeate the facts relating to the antitrust issues that they cannot be separated. It is urged, therefore, that the Arbitration proceedings must give way to the antitrust action and that arbitration must be stayed until the Federal Antitrust Action is concluded. *Applied Digital Tech., Inc. v. Continental Cas. Co.*, 7th Cir., 576 F.2d 116 (1978).

The issue of permeation is difficult to determine at this stage of the proceedings. Most courts have found impermissible permeation to exist if an arbitrator could not easily separate antitrust issues from other issues and could not easily decide the arbitrable issues without inquiry into the antitrust issues. The difficulty therefore is to ascertain the degree to which the antitrust issues permeate the contract issues and thus to determine the degree to which an arbitrator would struggle to sidestep the antitrust issues in deciding the contract claims. *Applied Digital Tech., Inc. v. Continental Cas. Co.*, supra; *Cobb v. Lewis*, supra; *Hunt v. Mobil Oil Corp.*, S.D.N.Y., 410 F.Supp. 10 (1975); *aff'd.*, 2nd Cir., 550 F.2d 68 (1977), *cert. den.* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477. Julian argues that none of the issues critical to an arbitration proceeding sufficiently overlap the issues to be determined in the federal antitrust action and, to obtain relief before the Arbitrator, it needs only to show the failure of Raytheon Service to grant time extensions, the failure to make timely payments for work performed, and the unlawful termination of the Subcontract.

Although it might be theoretically possible for an arbitrator to merely review the Subcontract and determine if it had been breached without delving into the antitrust issues, I find it unlikely that he could consider all the issues likely to be raised—especially those raised by Raytheon Service—at the Arbitration Hearing without necessarily

inquiring into matters also material to the antitrust claims. The arbitrator would likely inquire into Raytheon Service's motives, knowledge and intent in refusing the time extensions and the withholding of payments, all of which issues are intertwined with the issues in the antitrust claim. Public policy favors arbitration of contract disputes but that policy must yield where it would be difficult, "in light of the parties' contentions for the arbitrators to avoid wandering into the thicket of complex antitrust issues." *Hunt v. Mobile Oil Corp.*, supra at 26.

There does seem to be a reluctance on the part of courts to hold that an antitrust issue fatally permeates an entire case unless there is a relatively good chance for success on the antitrust claim. *Varo v. Comprehensive Designers, Inc.*, 9th Cir., 504 F.2d 1103 (1974). In its antitrust claims, Julian alleges that Raytheon Service, its parent—Raytheon Company—, and the Building and Construction Trades Council of Delaware—a labor union—and its members had several meetings at which they reached an agreement among themselves to create labor unrest on the job site and thereby provide Raytheon Service with a basis for terminating its contract with Julian. Julian also contends that the assurances given by Raytheon Service and Raytheon Company to Julian before the Subcontract was entered into, to excuse delays due to strikes or other labor disputes, were made in bad faith solely to induce Julian to enter into the contract and although extensions were given to Raytheon Service by the owner, they were not passed on to Julian. Julian further alleges that when picketing and labor violence failed to cause it to abandon its work, Raytheon Service—in concert with the other defendants in the federal action—refused to make payments due to Julian in order to place additional pressure on it. It seems clear that these allegations present antitrust claims that—if true—have a reasonable probability of success.

■ Julian chose to file its federal antitrust suit before the Subcontract termination dispute had been arbitrated and now

must be bound by the consequences of that act. I find that the issues in any arbitration proceeding which may be held so permeate the issues in the federal antitrust violation suit that the arbitration proceedings must be held in abeyance until the antitrust issues are disposed of by the federal courts. This is so because only the federal courts have jurisdiction to make factual determinations on issues involved in an alleged breach of the federal antitrust statutes and these factual issues permeate the factual issues which will necessarily arise in the arbitration proceedings. Julian's application to compel arbitration, therefore, must be denied at this time. So ordered. Raytheon Service's motion to dismiss this action must also be denied since the contract termination issues will ultimately be ripe for arbitration if they are not decided in the federal suit, but its motion to stay this action until the federal antitrust action is disposed of must be granted. So ordered.