**FARM FAMILY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Lloyd J. BLEVINS, Defendant.**

**Civ. A. No. 83–119.**

United States District Court,
D. Delaware.

Aug. 26, 1983.

Howard M. Berg and Stephen F. Dryden of Howard M. Berg & Associates, P.A., Wilmington, Del., for plaintiff.

John J. Schreppler II, of Richards, Layton & Finger, Wilmington, Del., and William J. Gallagher and Michael G. Louis of MacElree, Harvey, Gallagher, O'Donnell & Featherman, Ltd., West Chester, Pa., of counsel, for defendant.

MEMORANDUM OPINION

LATCHUM, Chief Judge.

This is a diversity action [1] brought by the plaintiff Farm Family Mutual Insurance Company ("Farm Family") against its insured, the defendant Lloyd J. Blevins, seeking a judgment declaring that the defendant cannot "stack" uninsured motorist coverage claims under three insurance policies issued by Farm Family to the defendant (Docket Item ["D.I."] 1). The case is before the Court on the parties' cross-motions. The defendant has moved to dismiss the action on the ground that the dispute between the parties should be determined by arbitration as provided in the insurance policies (D.I. 3). The plaintiff has cross-moved for summary judgment on the ground that the law of Delaware is applicable to the three uninsured motorist contract provisions and Delaware law does not permit "stacking" of uninsured motorist coverage claims (D.I. 7).

I.  *The Facts*

The undisputed facts may be summarized as follows. On April 19, 1981, the defendant, after alighting from his Harley-Davidson motorcycle and while a pedestrian, was struck and injured by an uninsured motor vehicle in New Garden Township, Chester County,[2] Pennsylvania (D.I. 3, Ex. A, ¶ 3; D.I. 8A, p. A2). At the time of the accident, defendant was the named insured in three separate insurance policies issued by Farm Family each of which contained uninsured motorist coverage provisions. These policies are: Policy No. 0702 R 0497 ("the '497 policy"), issued April 12, 1981, covering a 1973 Plymouth automobile; Policy No. 0702 R 0496 ("the '496 policy), issued April 12, 1981, covering a 1979 Ford and a

General Motors vehicle; and Policy No. 0702 R 0498 ("the '498 policy), issued April 18, 1981, covering a 1981 Harley-Davidson motorcycle. Each of these policies provided for uninsured motorist coverage in the amount of $10,000 for each person and $20,000 for each accident (D.I. 3, Ex. A, B & C). Two of the policies, the '497 policy covering the Plymouth and '498 policy covering the motorcycle, issued on April 12 and April 18, 1981 respectively, contain substantially identical provisions with respect to the settlement of disputes by arbitration. That provision reads:

> If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs, and bear the expenses of the third arbitrator equally. Unless both parties agree otherwise, arbitration will take place in the county and state in which the covered person lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

(D.I. 3, Ex. B—the '497 Policy.) [3]

The arbitration provision contained in the '496 policy, which issued on April 12, 1981 covering the Ford and General Motors vehicle, reads as follows:

> If any person making a claim hereunder and the company do not agree that such

---

1.  Jurisdiction is alleged to exist by virtue of 28 U.S.C. § 1332 in that the plaintiff is a corporation of the State of New York with its principal place of business located at West Glenmont, N.Y., and the defendant is a citizen and domiciliary of Hockessin, Delaware (D.I. 1, ¶¶ 2, 3 & 4).

2.  The complaint in this action erroneously alleges that the accident occurred in New Gar-

den Township, Delaware County, Pennsylvania, rather than Chester County (D.I. 1, ¶ 9).

3.  The only difference in the arbitration provisions in the '497 and '498 policies is that the phrase "because of bodily injury or property damage" in the first sentence quoted above does not appear in the '498 policy (D.I. 3, Ex. A—the '498 Policy).

person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

(D.I. 3, Ex. C—the '496 Policy.)

The prime difference in the arbitration provisions of the three policies is that the '497 and '498 policies call for common law arbitration while the '496 policy calls for arbitration under the rules of the American Arbitration Association.

Another difference must also be noted in that the provisions of the '497 and '498 policies provide that arbitration is to take place "in the county and state in which the covered person lives," in this case New Castle County, Delaware. But under the '496 policy, arbitration is to be conducted under the rules of the American Arbitration Association and under Rule 7 of the Association's "Accident Claims Arbitration Rules," effective May 1, 1981, "either the county of residence of the insured or the county where the accident occurred may be designated by the insured as the locale in which the hearing is to be held." (D.I. 8A, p. A–31.)

Apparently, sometime prior to October, 1982, defendant made a demand upon Farm Family for uninsured coverage claims of $15,000 under each of the three policies and was advised by Farm Family that the limit of liability under the '498 policy (on the motorcycle) was limited to $10,000 and that nothing was due under the uninsured motorist's coverage in the other two policies. As a result of this advice, defendant's attorney on October 6, 1982 demanded common law arbitration under the '498 and '497 policies and named his arbitrator and on the same date requested Farm Family to agree to arbitrate the claim made under the '496 policy in the same manner as provided in the '498 and '497 policies even though the '496 policy called for arbitration by the American Arbitration Association (D.I. 8, see 3 letter exhibits attached).

When Farm Family advised the defendant that no proper demand had been made for arbitration under the '496 policy by the American Arbitration Association, defendant filed such a demand under date of February 21, 1982 (D.I. 8A, p. A–2).[4]

When Farm Family refused to arbitrate and appoint an arbitrator under any of the policies, defendant filed a complaint in the Court of Common Pleas of Chester County, Pennsylvania, No. 28 Equity Term, 1983, against Farm Family requesting the court either to appoint arbitrators under the '497 and '498 policies or to compel Farm Family to appoint arbitrators and to arbitrate under the provisions of those two policies (D.I. 8A, pp. A–3 through A–6). Farm Family has moved to dismiss the Chester County Court action for lack of jurisdiction over Farm Family, failure to properly demand arbitration, and on the ground that the action must be heard in Delaware. (Id., pp. A–8 through A–10.)

On March 2, 1983, Farm Family instituted this declaratory judgment action (D.I. 1). Then, on March 25, 1983, the American Arbitration Association wrote to defendant's attorney, in response to defendant's demand for arbitration under the '496 policy, that the Association was suspending further administration of such proceedings in view

---

**4.** Because Farm Family apparently denied it had received the February 21, 1982 demand for arbitration of the '498 policy (which was in error as the same was found in its files (D.I. 8A, p. A–2)), a second demand was made under date of June 15, 1983 (D.I. 11, Ex. A).

of the fact that this suit had been filed and in view of Rule 4 of the Association's Accident Claim Rules (D.I. 8A, p. A–35). The sixth unnumbered paragraph of Rule 4 of those rules provides:

Where the insurer moves in court to contest coverage, administration will be suspended until that issue is determined. Arbitrators may only decide contested issues of coverage where ordered to do so by the court, or where authorized by law, or where both parties agree in writing. (D.I. 8A, p. A–31.)

## II. *Discussion*

Clearly, the dispute between the defendant and Farm Family is the "amount of damages," if any, to which defendant is entitled under the uninsured motorist provisions of the three separate policies. The defendant apparently contends that since the accident occurred in Pennsylvania, the law of that state applies which permits "stacking" of the uninsured motorist coverage of all three policies and provides for a minimum coverage of $15,000 on each. (D.I. 8, Ex. thereto.) Farm Family, on the other hand, contends that since the policies were issued in Delaware to a Delaware domiciliary, Delaware law applies and under Delaware law "stacking" of uninsured motorist coverage is not permitted, and that, while the minimum coverage of $10,000 under the '498 policy issued on the motorcycle is available to defendant if he establishes proof of damages, no uninsured motorist coverage is available to defendant under the '496 or '497 policies (D.I. 8, Affid. of Dennis Eldridge ¶ 8). Thus, Farm Family appears to contend that only the factual issue of the "amount of damages" was committed to arbitration and that the question of liability limits and coverage involves a dispute of law to be determined by this Court and not as an issue for arbitration.

Because this is a diversity suit, this Court must view the question as one being faced by the Delaware State courts. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Nelson v. Allstate Ins. Co.,* 298 A.2d 337 (Del.Supr.1972), Judge McNeilly (now Justice McNeilly of

the Delaware Supreme Court) dismissed a suit by an insured against his insurance company to recover under an uninsured motorist clause on the ground that the dispute concerned the question of whether the insured was legally entitled to recover damages, and if so, the amount of such damages which had been by contract reserved to be settled by arbitration. In that case the court stated:

[T]his Court is of the opinion that the better rule is to enforce agreements to arbitrate where the terms are clear and specific. The arbitration agreement in the instant case relates specifically to the Uninsured Motorists Provisions in the policy and clearly refers to disputes concerning whether or not the insured is legally entitled to recover damages and, if so, the amount of damages to be recovered. Where the scope of arbitration is so narrowly drawn and the terms thereof so clearly laid out the contract agreed to by the parties should be enforced. Plaintiffs in this case have in no way demonstrated in what manner the arbitration would work a fraud upon them or deprive them of substantial justice on their claim for damages. In the absence of such a showing there is no sufficient reason to refuse an enforcement of their voluntary agreement.

The court relied in the *Nelson* case upon *Miller v. Allstate Ins. Co.,* 238 F.Supp. 565 (W.D.Pa.1965), where that court enforced an identical arbitration provision in order to prevent the circumvention of the clear language of the insurance contract.

Since the Delaware legislature adopted the Uniform Arbitration Act, 10 *Del.C.* § 5701 *et seq.,* "the public policy of this State is now to enforce agreements to arbitrate without regard to the justiciability of the underlying claims." *Pettinaro Const. Co. v. Harry C. Partridge, Jr. & Sons,* 408 A.2d 957, 961 (Del.Ch.1979). In the latter case, the question was what procedure should be used to commence the arbitration proceeding. The court stated:

The question of what procedure must be followed to initiate the arbitration proc-

ess is obviously a matter of construing the contract and thus within the scope of the arbitration agreement. The proper method of initiating arbitration under the contract is a matter for decision of the arbitrator. This view is bolstered by the expression of the policy against dividing disputes into substantive and procedural aspects to be determined partly by arbitrators and partly by courts as found in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909 [11 L.Ed.2d 898] (1964) and consistently followed in the federal courts, including our own circuit. *Local 595, Int'l Assn. of Machinists v. Howe Sound Co.,* 3d Cir., 350 F.2d 508, 511 (1965).

408 A.2d at 963 (citations omitted); *see also James Julian, Inc. v. Raytheon Service Co.,* 424 A.2d 665, 667 (Del.Ch.1980), where the court stated that "the scope of an arbitration agreement is ordinarily determined by the arbitrator and not by a Court" and "all doubts as to the arbitrability of an issue must be resolved in favor of arbitration." *Id.*

██ With this understanding that it is the public policy of Delaware to favor arbitration contracts, the Court turns to the three insurance policies in question embodying language inserted by Farm Family. The '497 and '498 policies clearly provide that if the insured and Farm Family disagree whether the insured "is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage, or do not agree as to the amount of damages," either party may demand arbitration of the dispute. The '496 policy also unambiguously provides that if the insured and Farm Family "do not agree that the . . . [insured] is legally entitled to recover damages from an owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance," then either party may demand arbitration.

Thus the dispute which exists between the parties here is the amount, if any, which the defendant is legally entitled to recover from Farm Family for the claims made by the defendant under the provisions of the uninsured motorist coverage contained in the three separate insurance policies issued to the insured. While determining the amount of damages may require deciding the question of "stacking" depending on what state law applies, they are issues that were unquestionably, by express contract, committed to arbitration.

██ It is settled law that whether a court should grant a declaratory judgment under 28 U.S.C. §§ 2201–2202, as sought in this action, is a matter committed to the court's sound discretion. *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Travelers Ins. Co. v. Davis,* 490 F.2d 536, 543 (3d Cir.1974). Because it is the State of Delaware's public policy favoring arbitration when the parties have contracted therefor, the Court, in the exercise of its discretion, instead of dismissing the action, will stay all proceedings herein until the disposition of appropriate arbitration proceedings have been conducted in accordance with the terms of each of the three policies in question.[5] The arbitrators should determine the question of "stacking" and then the amount of damages due. Since it is not the responsibility of this Court to determine the issues committed to arbitration, plaintiff's motion for a declaratory judgment will be denied. An order will be entered in accordance with this memorandum opinion.

---

**5.** It is difficult to fathom why the three insurance policies issued to defendant within a period of four days contained different methods of arbitration.