# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| H & S VENTURES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N15C-11-082 JRJ |
| | ) | |
| | ) | |
| RM TECHTRONICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: December 16, 2016
Date Decided: January 18, 2017

## ORDER GRANTING RM TECHTRONICS, LLC'S MOTION TO STAY OR DISMISS IN FAVOR OF ARBITRATION

Upon consideration of Defendant RM Techtronics, LLC's Motion to Stay or Dismiss in Favor of Arbitration,[1] and Plaintiff's Response thereto;[2] and the record in this case, **IT APPEARS THAT:**

1. This dispute arises out of a 2013 transaction between Plaintiff H&S Ventures, Inc. ("H&S") and Defendant RM Techtronics, LLC ("RM") in which H&S sold its assets to RM in exchange for one-third ownership in RM.[3] RM and H&S signed multiple agreements in connection with the transaction, including the

---

[1] RM Techtronics LLC's Opening Brief Supporting its Motion to Dismiss or Stay in Favor of Arbitration ("Def. Mot. to Dismiss or Stay") (Trans. ID. 59708705).
[2] Memorandum of Law of Plaintiff H&S Ventures, Inc. in Opposition to RM Techtronics LLC's Motion to Dismiss or Stay in Favor of Arbitration ("Pl. Opp. to Def. Motion to Dismiss or Stay") (Trans. ID. 59803148).
[3] *See* Complaint ¶¶ 6–19 (Trans. ID. 58146083).

Asset Purchase Agreement ("APA"), executed on October 14, 2013, and the LLC Operating Agreement ("LLC Agreement"), executed on December 23, 2013.[4]

2.  The APA contains a "Put Right" Provision which provides that H&S "shall have the right to require [RM] to purchase all . . . of the Membership Units" owned by H&S "if and only if" RM fails to meet three financial performance conditions (the "Put Conditions"), set forth in the APA, within twelve months from the Closing Date.[5]

3.  The APA also contains an Integration Clause which provides: "This Agreement and the schedules referred to herein and the Transaction Documents constitute the entire agreements of the parties hereto with respect to the purchase of the Purchased Assets and the other transactions contemplated herein. Any reference herein to this Agreement shall be deemed to include the schedules hereto."[6] The APA defines "Transaction Documents" as "all such other bills of sale, endorsements, assignments, or other instruments or documents . . . ."[7] In addition, a form LLC Operating Agreement, referred to as a "counterpart" to the later-executed LLC Agreement,[8] is listed as "Exhibit D" on the APA's "List of Schedules and Exhibits."[9] The APA also contains a list of deliveries to be made by

---

[4] *Id.* ¶¶ 6–7.
[5] Asset Purchase Agreement ("APA") § 2.4(a) (Trans. ID. 58643392).
[6] *Id.* § 18.3.
[7] *Id.* § 3.2(a).
[8] *Id.* § 3.2(e).
[9] *Id.* at 43.

2

H&S to RM at the Closing; all of the Exhibits on the "List of Schedules and Exhibits," including the LLC Operating Agreement, are expressly included in this list.[10]

4.   The LLC Agreement contains an arbitration clause which provides: "[A]ny dispute, claim, or controversy arising from or related in any way to this agreement or the interpretation, application, breach, termination or validity thereof . . . will be resolved by arbitration before a single arbitrator in Hartford, Connecticut, pursuant to the commercial rules then obtaining of the American Arbitration Association" (the "Arbitration Provision").[11] The Arbitration Provision contains one exception for violations of Section 11 of the LLC Agreement,[12] which are instead subject to injunctive relief.[13]

5.   The LLC Agreement includes an Integration Clause which provides: "This Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto."[14] The LLC Agreement also contains the following Counterparts Provision: "This Agreement may be executed in any

---

[10] *Id.* § 3.2(e). The other exhibits specifically included in the list are: Exhibit A (Bill of Sale), Exhibit B (Key Employee Agreements), and Exhibit C (Proprietary Rights and Noncompetition Agreements). *Id.* § 3.2(a)–(d). The list also includes "Transaction Documents." *Id.* § 3.2(a).

[11] Limited Liability Company Agreement of RFCO Acquisition LLC ("LLC Agreement") § 13.12 (Trans. ID. 58643531).

[12] Section 11 details the covenants relating to confidentiality. *See id.* § 11.1.

[13] *Id.* § 11.3.

[14] *Id.* § 13.11.

3

number of counterparts with the same effect as if all parties hereto had signed the same document. All counterparts shall be construed together and shall constitute one instrument."[15]

6. Sections 8.8(c) and 8.10 of the LLC Agreement specifically contemplate the APA's Put Right Provision—the provision pursuant to which H&S has filed the instant suit against RM.[16]

7. On November 10, 2015, H&S sued RM for breach of contract.[17] H&S seeks to enforce the Put Right defined in the APA, alleging that RM failed to meet the Put Conditions by December 31, 2014.[18]

8. On October 17, 2016, RM moved to dismiss or stay this suit in favor of arbitration.[19] RM asserts that this dispute should be submitted to arbitration pursuant to the Arbitration Provision in the LLC Agreement.[20]

9. In opposition, H&S contends that this dispute arises solely under the APA, and therefore, the Arbitration Provision in the LLC Agreement is inapplicable.[21] H&S further argues that even if the Arbitration Provision is deemed applicable, RM waived its right to demand arbitration because RM

---

[15] *Id.* § 13.7.
[16] *Id.* §§ 8.8(c) (referring to the Put Right Provision in the APA and defining "Asset Purchase Agreement"), 8.10 (twice referring to § 2.4 of the APA).
[17] *See* Complaint.
[18] *Id.* ¶¶ 11, 15–16, 18–19, 22.
[19] Def. Mot. to Dismiss or Stay.
[20] *See id.*
[21] *See* Pl. Opp. To Def. Motion to Dismiss or Stay.

4

substantially participated in these proceedings, and because RM waited over ten months to raise the issue of arbitration.[22]

10. RM contends that the Arbitration Provision is broad and applies because it is incorporated into the APA.[23] RM argues that it has not waived its right to demand arbitration because H&S has not been prejudiced by RM's delay in bringing this motion.[24]

11. The APA and the LLC Agreement are integrated and must be read together. The APA's definition of "Transaction Documents" is broad, including a list of "all such . . . bills of sale, endorsements, assignments, or other instruments or documents."[25] This broad definition of "Transaction Documents" includes the LLC Agreement.[26] The APA's List of Schedules and Exhibits includes a form LLC Agreement,[27] and the APA's Integration Clause states that the Transaction Documents and Schedules, along with the APA, "constitute the entire agreements of the parties hereto."[28] The APA's list of documents to be delivered at the

---

[22] *See id.*

[23] *See* Def. Mot. to Dismiss or Stay at 13–17; RM Techtronics LLC's Reply Brief Supporting its Motion to Dismiss or Stay in Favor of Arbitration at 1–6 ("Def. Reply Br.") (Trans. ID. 59864854).

[24] Def. Reply Br. at 13.

[25] APA § 3.2(a).

[26] *See, e.g., Zimmerman v. Crothall*, 62 A.3d 676, 715 n.212 (Del. Ch. 2013) (Deeming the term "Indemnified Party," defined in the contract as "includ[ing] the Purchasers and their affiliates and their respective officers, directors, trustees, agents, representatives, employees, and controlling persons," to include an individual the Court identified as an "agent," given that it was a "broad definition").

[27] APA at 43.

[28] *Id.* § 18.3.

Closing expressly includes the LLC Agreement.[29] Moreover, the LLC Agreement, which functions to "further[] the transaction outlined in the [APA],"[30] references the APA's Put Right Provision in two sections and states that it "supersedes all prior agreements." The numerous cross-references between the two agreements,[31] and the fact that they are both parts of the same overall transaction,[32] are "sufficient nexus[es] to justify the merging of . . . these documents."[33]

12. The Arbitration Provision encompasses disputes "in any way related to" the LLC Agreement. In *BAYPO Partnership v. Technology JP, LP*,[34] at issue was an arbitration clause containing the language, "arising out of and related to the Transactions."[35] The dispute in *BAYPO* arose under an agreement that was separate from, but integrated with, the agreement which contained the arbitration

---

[29] *Id.* § 3.2.

[30] *See BAYPO Ltd. P'ship v. Tech. JV, LP*, 940 A.2d 20, 27 (Del. Ch. 2007).

[31] *See, e.g.*, APA §§ 3.2(a), 18.3; LLC Agreement §§ 8.8(c), 8.10.

[32] *See* Restatement (Second) of Contracts § 202 (1981) ("[W]ritings that are part of the same transaction are interpreted together.").

[33] *BAYPO*, 940 A.2d at 28 n.33. It is not fatal to RM's integration argument that the APA and the LLC Agreement were signed at different times. *See id.*

Also persuasive to this determination are the paragraphs in the Complaint which reference the LLC Agreement. *See* Complaint ¶¶ 10, 13, 17 (Trans. ID. 58146083). The Complaint cites the Net Cash Flow Provision and definition, and refers to the LLC Agreement for the definition of Net Cash Flow. *Id.* ¶ 13; *see also* LLC Agreement § 1.27. The APA states: "[I]n the event that the Seller exercises the Put Right, the Purchaser shall distribute to the Seller, a percentage, equal to the Seller's Percentage Interest (as defined in the [LLC] Operating Agreement), of the Purchaser's Net Cash Flow (as such term is defined in the [LLC] Operating Agreement) as of the date of the exercise of the Put Right . . . ." APA § 2.4(a). The Complaint's reference to Net Cash Flow, which is inextricably linked to the Put Right, further evidences the applicability of the Arbitration Provision to this dispute.

[34] *Id.*

[35] *Id.* at 28 n.10.

6

clause.[36] Because the agreements were integrated, the Court of Chancery found the language sufficient to send the dispute to arbitration.[37] Here, the language "in any way" precedes "related to" in the Arbitration Provision. The phrase "in any way" thus makes the Arbitration Provision here even broader than that at issue in *BAYPO*. Given this language, it is apparent that the parties intended for the Arbitration Provision to have a broad scope.[38]

13. The claim *sub judice* is related to the LLC Agreement: the LLC Agreement contemplates the Put Right in two sections; the execution of the LLC Agreement, along with the other Transaction Documents, perfected the Closing as contemplated in the APA; and the LLC Agreement and the APA are integrated and therefore should be read together. Consequently, this dispute does not arise solely under the APA.[39]

---

[36] *Id.* at 27–28.

[37] *Id.* at 28.

[38] *See Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1150 (Del. Ch. 2006); *see also, e.g., Rose Heart, Inc. v. Ramesh C. Batta Assocs., P.A.*, 1994 WL 164581, at *4 (Del. Super. Apr. 12, 1994); *Karish v. SI Int'l, Inc.*, 2002 WL 1402303, at *2 (Del. Ch. June 24, 2002); *Bayless v. Davox Corp.*, 2000 WL 268310, at *1 (Del. Ch. Mar. 1, 2000).

[39] *See James & Jackson v. Willie Gary*, 906 A.2d 76 (Del. 2006). The Arbitration Provision satisfies both prongs of the *Willie Gary* test. As to prong 1, the Arbitration Clause generally provides for arbitration of all disputes. There is one narrowly tailored exception that does not contravene this conclusion. *See West IP Communications, Inc. v. Xactly Corp.*, 2014 WL 3032270 (Del. Super. June 24, 2014). As to prong 2, the Arbitration Provision references the American Arbitration Association's set of rules ("AAA Rules"). The AAA Rules empower arbitrators to decide the issue of arbitrability. *See Carder v. Carl M. Freeman Communities*, 2009 WL 106510 (Del. Ch. Jan. 5, 2009). Therefore, it is proper for an arbitrator to ultimately decide whether this claim is arbitrable.

14. With regard to waiver, while it is undisputed that RM waited over ten months before it raised the issue of arbitration, and actively participated in this lawsuit for over ten months,[40] Delaware has a strong public policy favoring arbitration.[41] It is very difficult to waive arbitration even when there has been a delay in demanding arbitration, or where the party demanding arbitration has already played a substantial role in the litigation.[42] Courts generally look to whether the party opposing arbitration has suffered any prejudice as a result of the delay in demanding arbitration.[43] Here, there is no substantial prejudice to H&S resulting from the delay. While it is true that H&S's Motion for Summary Judgment will not be considered by the Court should this claim be arbitrable, H&S will have the opportunity to present its arguments, and related evidence, to an arbitrator. Consequently, this prejudice is not so substantial as to overcome the strong public policy favoring arbitration in Delaware.[44]

---

[40] *See W.R. Ferguson, Inc. v. William A. Berbusse, Jr., Inc.,* 59 Del. 229, 216 A.2d 876 (Del. 1966); *Falcon Steel Co. v. Weber Engineering Co.,* 517 A.2d 281 (Del. Ch. 1988).

[41] *See, e.g., James Julian, Inc. v. Raytheon Serv. Co.,* 424 A.2d 665, 668 (Del. Ch. 1980).

[42] *See, e.g., The Town of Smyrna v. Kent Cty. Levy Court,* 2004 WL 2671745, at *3 (Del. Ch. Nov. 9, 2004); *Parfi Holding AB v. Mirror Image Internet, Inc.,* 842 A.2d 1245, 1260 (Del. Ch. 2004); *Ballenger v. Applied Digital Solutions, Inc.,* 2002 WL 749162, at *7 (Del. Ch. Apr. 24, 2002); *Wilshire Rest. Group, Inc. v. Ramada, Inc.,* 1990 WL 195910, at *3 (Del. Ch. Dec. 5, 1990); *Action Drug Co. v. R. Baylin Co.,* 1989 WL 69394, at *5 (Del. Ch. June 19, 1988).

[43] *E.g., Halpern Med. Servs., LLC v. Geary,* 2012 WL 691623, at *3 (Del. Ch. Feb. 17, 2012) ("[I]t is not merely the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of waiver.") (quoting *Gavlik Constr. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir. 1975)).

[44] *E.g., Smyrna,* 2004 WL 2671745, at *3.

**NOW THEREFORE**, for the foregoing reasons, Defendant's Motion to Dismiss or Stay in Favor of Arbitration is **GRANTED** and this matter is **STAYED** pending, and subject to, the arbitrator's decision on arbitrability.  The parties shall report the arbitrator's decision on arbitrability to the Court within 30 days of its issuance.

**IT IS SO ORDERED.**

_____/s/ Jan R. Jurden_____
Jan R. Jurden, President Judge

9