**Milan MILAN**

v.

**AMERICAN VISION CENTER and Gary Kirshner, O.D., P.C.**

**Civil Action No. 97–1253.**

United States District Court, E.D. Pennsylvania.

Oct. 19, 1998.

James E. Beasley, James E. Foerstner, Beasley, Casey and Erbstein, Philadelphia, PA, Akim F. Czmus, Beasley, Casey, Colleran, Erbstein, Thistle & Kline, Philadelphia, PA, for Plaintiffs.

Jacqueline M. Carolan, Daniel G. Lyons, Michelle T. Wirtner, Fox, Rothschild, Obrien & Frankel, LLP, Philadelphia, PA, for Defendants.

### OPINION

POLLAK, District Judge.

This is a medical malpractice case against an optometrist, his corporate employer, and

the corporation's owners sounding in negligence (count one) and the Pennsylvania doctrine of "corporate negligence" (count two). On May 8, 1998, defendants filed a motion for partial summary judgment on count two, claiming that the corporate negligence claim against American Vision Center and Gary Kirshner, O.D., P.C. was improper. Defendants argue that: (1) the Pennsylvania doctrine of corporate negligence established in *Thompson v. Nason Hosp.*, 527 Pa. 330, 591 A.2d 703 (Pa.1991) applies only to hospitals, not to optometrists' offices; and (2) even if corporate negligence extends to optometrists' offices, plaintiff has violated the requirements of *Welsh v. Bulger*, 548 Pa. 504, 698 A.2d 581 (Pa.1997) by not producing expert witnesses against American Vision Center or Dr. Gary Kirshner, O.D., P.C., establishing that they—not just Dr. Gary Kirshner, O.D.—deviated from the standard of corporate care. Plaintiff suggests that the doctrine covers "health care corporation[s]", and that its expert witness reports opine that American Vision Center and Dr. Gary Kirshner, O.D., P.C., deviated from the standard of care.[1]

On its own terms, *Thompson* dealt with the question of *hospital* liability, not the liability of "health care corporation[s]." Thompson had been admitted to a hospital emergency room for injuries suffered in a motor vehicle accident. The injuries and her prior heart condition necessitated consultations among several physicians, and while hospitalized Thompson developed complete paralysis of her left side. She sued two doctors and the hospital, alleging inadequate examination, treatment, consultations and monitoring. Though the hospital could not have been held liable for the act of its independent contractor-physicians under traditional notions of respondeat superior or agency, the Supreme Court held that it "could be found liable on the theory of corporate liability for adverse effects of treatment or surgery approved by doctors although the doctors were not employees of the hospital." *Thompson*, 591 A.2d at 706. After undertaking a lengthy historical discussion of the common law liability of hospitals, *id.* 591 A.2d at 706–07, the Supreme Court decided to "adopt as a theory of hospital liability the doctrine of corporate negligence or corporate liability under which the hospital is liable if it fails to uphold the proper standard of care owed its patient." *Id.* at 708. In its facts and holding, *Thompson* sets a standard of care for hospitals, not necessarily for all health care organizations. Though Justice Flaherty criticized the doctrine for not containing any "logical basis upon which to limit this extension of liability" and characterized the majority's decision as one that would lead to "all corporations, regardless of their lines of business, [being] assertedly responsible for the torts of their independent contractors," *id.* at 709 (Flaherty, J., dissenting), the court itself focused solely on hospitals.

The use of language throughout *Thompson* similarly suggests that the Supreme Court believed itself to be crafting a rule of hospital liability, not health care organization liability generally. Thus the first sentence of the decision, defining the court's jurisdiction, notes that "[a]llocatur was granted to examine the novel issue of whether a theory of corporate liability *with respect to hospitals* should be recognized," *id.* at 704 (emphasis added). *Thompson* is far from generic in its analysis; Justice Zappala, writing for the majority, undertook a lengthy historical discussion of hospital liability under the common law. *Id.* at 706–07. Indeed, the court maintained a focus on hospitals throughout the decision. *See, e.g., id.* at 706 (noting that Superior Court had considered whether to adopt "a theory of corporate liability *with respect to a hospital.*") (emphasis added), *id.* at 707; ("We now turn our attention to the theory of corporate liability *with respect to the hospital*") (emphasis added); *id.* at 708 ("A critical step toward recognition of this theory of *hospital* liability already has been taken") (emphasis added); *id.* ("we adopt as a theory of *hospital liability* the doctrine of corporate negligence or corporate liability under which

---

1. A court should grant a motion for summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). If the non-moving party does not state a claim under applicable law, there is no genuine issue as to any material fact.

the *hospital* is liable if it fails to uphold the proper standard of care") (emphasis added).

■ That *Thompson* concerned hospitals does not necessarily mean that the Pennsylvania Supreme Court will not in the future extend the doctrine of corporate liability to other health care organizations, or indeed (as Justice Flaherty feared) to all corporations. The Pennsylvania Supreme Court has not yet spoken to that question, however. In the absence of such an authoritative determination, this federal trial court must undertake to predict what rule Pennsylvania's appellate courts will ultimately fashion. "When presented with a novel issue of [state] law, or where applicable state precedent is ambiguous, absent or incomplete, [a federal court] must. determine or predict ·how the highest state court would rule." *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir.1991). As the Third Circuit recently noted, "[a]bsent a definitive statement of the applicable law by the state's highest court," intermediate appellate state court opinions "facilitate" a federal district court's predictive inquiry, *Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir.1998).

No published case in the Commonwealth has considered the corporate negligence of an optometrist's office, or more generally of any sort of medical practice. However, the Superior Court has recently considered whether corporate negligence extends to a somewhat analogous health organization: health maintenance organizations [HMOs]. In *Shannon v. McNulty*, 718 A.2d 828 (Pa.Super. 1998), a mother and father (the Shannons) sued for damages arising from the death of their pre-term baby son. The Shannons alleged negligence against an obstetrician for failing to diagnose and treat signs of pre-term labor, and iterated two grounds of liability against the HMO: vicarious liability for the negligence of its nursing staff in

failing to respond properly to Mrs. Shannon's complaints; and corporate liability for both negligent supervision of the obstetrician's care and "lack of appropriate procedures and protocols when dispensing telephonic medical advice to subscribers." *Shannon*, 718 A.2d 828, 829.

*Shannon* concluded that the doctrine of corporate liability—which *Thompson* had arguably presumed limited to hospitals—should be construed to extend to HMOs. Central to *Shannon's* conclusion was its finding that ·HMOs, like hospitals, "play central role[s] in the total health care" of their patients. *Id.* at 835 (*quoting Thompson*, 591 A.2d at 708). *Shannon* found the plaintiff to have been constrained in her health care choices by the HMO [2], which required her to call either her obstetrician or the HMO's emergency line (staffed by the HMO's triage nurses) before receiving medical care. Because HMO subscribers are "given little or no say so in the stewardship of their care," and because HMOs "involve themselves daily in decisions affecting their subscriber's medical care," the Superior Court found that *Thompson's* corporate liability duties should "be equally applied to an HMO when that HMO·is performing the same or similar functions as a hospital." *Id.* at 835.

■ Of course I cannot, with any degree of assurance, venture a prophecy on whether the Pennsylvania Supreme Court will ultimately agree with the Superior Court on the issue· of HMO corporate liability.[3] But my expectation is that the Superior Court's approach to the problem will be vindicated. I so expect because, as a general matter, a federal court should not disregard the decision of an intermediate appellate state court " 'unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Rolick*, 925 F.2d at 664 (*quoting West v. AT&T Co.*, 311 U.S. 223,

2. Mrs. Shannon testified at trial that her HMO membership card required her to contact either her physician or the HMO if any emergencies arose. *Shannon*, 718 A.2d 828, 831, 1998 WL 682487 at *4.

3. Inaccurate prediction of state law by federal courts is not a rarity. *See Hakimoglu v. Trump Taj Mahal Associates*, 70 F.3d 291, 294, 302–03

& n. 11 (Becker, J., dissenting) (listing erroneous Third Circuit predictions of Pennsylvania law). As Judge Sloviter has noted, "[a]ll of the circuits have similar problems in predicting state law accurately." Dolores K. Sloviter, A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism, 78 Va. L.Rev. 1671, 1680 (1992).

237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). This court has no such contrary data; *Shannon* appears to be in close accord with *Thompson.* The relevant question is, then, whether the Pennsylvania Supreme Court is likely to extend *Thompson* beyond *Shannon;* i.e., whether the court will hold that corporate liability extends to doctors' practices in general or to optometrists' offices in particular. I predict that it will not.

*Shannon* rested on the HMO's functional similarity to a hospital, particularly its gatekeeping role in the "total health care" of its subscribers. Optometrists' offices play no such role in patients' lives. Like doctors' offices in general, a patient entering an optometrist's office does not forfeit—legally or practically—the ability to turn elsewhere for medical care. An HMO may legally constrain a subscriber's choice of medical care (or, more properly, her choice of *covered* medical care), and a hospital practically constrains a patient's choice by inducing her to rely on its comprehensive services in times when her ability to make choices will be compromised. An optometrist's office has no such effect. A person seeking contact lenses, such as plaintiff, is free to visit other optometrists in other offices. Any contract an eye care patient makes with an optometrist or optometrist's office does not foreclose the patient's ability to contract with other optometrists. And unlike the emergent medical situations at issue in *Thompson* and *Shannon,* a visit to an optometrist's office generally does not require a patient to commit to a single corporate health care provider as a matter of medical necessity. For these reasons, I anticipate that the Pennsylvania Supreme Court will not extend the doctrine of corporate liability to cover optometrists' offices.

Because I conclude that the courts of Pennsylvania will, when faced with the issue, decline to recognize corporate negligence in the context of optometrists' offices, there is no genuine issue of material fact.[4] The accompanying order thus grants Defendant's Motion for Partial Summary Judgment,

thereby dismissing Count II of plaintiff's complaint.

### ORDER

For the reasons set forth in the Opinion accompanying this Order, Defendant's Motion for Partial Summary Judgment is GRANTED, and Count II of plaintiff's complaint is hereby DISMISSED.

---

4. Because I find that the corporate negligence doctrine does not apply to this case, I express no opinion as to whether plaintiff has produced the expert testimony called for by *Welsh v. Bulger,* 548 Pa. 504, 698 A.2d 581 (Pa.1997) and *Shannon.*