# Frantz v. HCR Manor Care Inc.

C.P. of Schuylkill County, no. S-2374-2002.

*Kenneth A. Wise,* for plaintiff.
*Maria R. Granaudo,* for defendant.

MILLER, *J.,* December 12, 2003—Before the court are the preliminary objections of defendant, HCR Manor Care Inc., t/a Manor Care of Pottsville, to the complaint filed by the plaintiff, Mamie I. Frantz, individually and as executrix of the estate of Curtis L. Frantz Sr. her deceased husband. Plaintiff maintains that the quality of care delivered to the plaintiff's decedent from the defendant fell below an acceptable standard of care resulting in Mr. Frantz' death. Defendant is engaged in the business of providing nursing home services as a health care provider licensed by the Commonwealth with its principal place of business located in the City of Pottsville, Schuylkill County, Pennsylvania.

On December 18, 2000, plaintiff's decedent was admitted to the defendant's nursing home for respite care. Prior to his admission, plaintiff had been providing care to her husband at home with the assistance of Pinnacle Hospice Care. Respite care was recommended by Hospice to allow plaintiff to deal with her health problems brought on by the demands of being her husband's primary care giver. Plaintiff's decedent had been diagnosed with lung cancer in October 1999. His health slowly declined over time. Plaintiff's decedent received hospice care on November 29, 2000 until his transfer to

defendant's facility on December 18, 2000. Plaintiff asserts that her husband's health was stable but declining. Plaintiff's husband was admitted to the facility after plaintiff, as her husband's power of attorney, executed an admission agreement with defendant for her husband's care during a respite period with a potential permanent placement. The first seven days of care were to be funded by hospice. Six days after admission, on December 23, 2000, Mr. Frantz died while still residing at the defendant's nursing home.

Plaintiff asserts that at the time of her husband's admission he had the following: (1) reddened area on his buttocks commonly referred to as a pressure area also known as a stage one decubitus ulcer; (2) impaired lung capacity with a physician's order for constant oxygen; (3) dietary needs requiring soft and pureed food which needs were discussed with defendant's staff; (4) pain which required narcotic pain medication through a patch applied to his skin with physician-ordered medication for break-through pain control; (5) shortness of breath which required the administering of Ativan on an as-needed basis; (6) inability to walk and sit without support.

The complaint also avers that during the course of the decedent's six-day stay at the nursing home the decedent was not provided with oxygen; suffered three falls; had no precautions to protect him from the falls until after the first two falls; was not provided with pureed or soft form food; was not turned and positioned to prevent the progression of the ulcer on his buttock; mouth care and hydration were not provided every two hours; nor was staff intervention provided to the decedent as re-

quired pursuant to the agreement. Plaintiff avers that this lack of care resulted in additional pain, suffering, humiliation and lessening of the decedent's quality and quantity of life thereby hastening his death on December 23, 2000. Plaintiff initiated this action via writ of summons under date of December 16, 2002. The complaint was filed on February 11, 2003. Preliminary objections were filed on February 27, 2003. On April 28, 2003, plaintiff filed a second amended complaint. Preliminary objections and a brief were filed to the second amended complaint on May 15, 2003. The plaintiff filed a timely brief and appendix opposing the preliminary objections. Plaintiff then requested oral argument. Oral argument was concluded on October 1, 2003. At the parties' request, an extension to submit supplemental briefs addressing issues raised during oral argument was granted. Respective supplemental briefs having been filed, this matter is now ripe for decision.

Plaintiff's second amended complaint sets forth five counts: negligence, negligence per se, corporate liability, wrongful death in which punitive damages are requested, and survival action in which punitive damages are also requested. The preliminary objections sub judice are:

I. A demurrer to the negligence per se and negligence claims for violations of federal and state regulations.

II. A motion to strike paragraphs 54(p) and (y) for lack of specificity.

III. A demurrer to corporate liability, and, in the alternative, a motion to strike the corporate liability allegations for lack of specificity.

IV. A motion to strike the punitive damages claims under the wrongful death and survival actions.

When reviewing preliminary objections in the nature of a demurrer, we must accept all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. "Where any doubt exists as to whether a demurrer should be sustained it should be resolved in favor of overruling the demurrer." *Jackson v. Garland,* 424 Pa. Super. 378, 381, 622 A.2d 969, 970 (1993), *The Reverend J.E.J. Sr. v. Tri-County Big Brothers/Big Sisters Inc.,* 692 A.2d 582 (Pa. Super. 1997).

Under Pennsylvania law, preliminary objections should only be sustained in cases that are "free and clear from doubt." *Bower v. Bower,* 531 Pa. 54, 57, 211 A.2d 181, 182 (1992). Therefore, "a court must overrule [objections in the nature of a demurrer] if the complaint pleads sufficient facts which, if believed, would entitle the petitioner to relief under any theory of law." *Wilkinsburg Police Officers Association v. Commonwealth,* 535 Pa. 425, 431, 636 A.2d 134, 137 (1993). Since we must follow these principles, the defendant's preliminary objections are sustained in part and overruled in part.

## I. NEGLIGENCE PER SE

"The concept of negligence per se establishes both duty and required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm . . . ." *Braxton v. PennDOT,* 160

Pa. Commw. 32, 45, 634 A.2d 1150, 1157 (1993). See *Lutheran Distributors v. Weilersbacher,* 437 Pa. Super. 391, 650 A.2d 83 (1994). In analyzing a claim based on negligence per se, the purpose of the statute must be to protect the interest of a group of individuals, as opposed to the general public, and the statute must clearly apply to the conduct of the defendant. There must be a direct connection between the harm sought to be prevented by the statute and the injury. *Wagner v. Anzon Inc.,* 453 Pa. Super. 619, 627, 684 A.2d 570, 574 (1996). The Superior Court held that Wagner and other individuals in the class action were not entitled to maintain a cause of action for negligence per se based upon the defendant's violation of the Philadelphia Air Management Code of 1969, because the purpose of the code was to protect the atmosphere of the City of Philadelphia and the general public as opposed to a particular class of individuals such as the plaintiffs.

In paragraphs 72-94 of the instant complaint, plaintiff alleges that defendant is liable under a theory of negligence per se for alleged violations of the Code of Federal Regulations and the Pennsylvania Code with regard to the plaintiff's care including the following: 42 C.F.R. §483.10(b)(11), §483.13(c); §483.15(a), (e), (g), (h); §483.20(a); §483.25(a)(1)(iv), (a)(3), (c)(2), (d)(1), (h)(2), (i), (j); §483.35(a), (b), (c), (d), (e); and §483.75(d)(1) and 28 Pa. Code 201 et seq. Congress enacted the Nursing Home Reform Law (NHRL) as part of the Omnibus Budget Reconciliation Act of 1987. OBRA revised the regulations of nursing homes subject to Medicare and Medicaid, subchapters XVIII and XIX of the Social Security Act, respectively. 42 U.S.C. §1395i-3

(Medicare) and 42 U.S.C. §1396r (Medicaid). In order to obtain federal reimbursement under Medicare and Medicaid, a state must establish an approved state plan for medical assistance in accordance with the federal guidelines. In order to do this, each state promulgates its own statutes and regulations for its long-term facilities; hence, Pennsylvania enacted the Health Care Facilities Act, 35 P.S. §448.101. However, our Commonwealth's response to OBRA provides a much broader purpose to PHCFA as set forth in 35 P.S. §448.102:

"The General Assembly finds the health and welfare of Pennsylvania citizens will be enhanced by the orderly and economical distribution of health care resources to prevent needless duplication of services. Such distribution of resources will be furthered by governmental involvement to coordinate the health care system. Such a system will enhance the public health and welfare by making the delivery system responsive and adequate to the needs of its citizens, and assuring that new health care services and facilities are efficiently and effectively used; that health care services and facilities shall continue to meet high quality standards; and, that all citizens receive humane, courteous, and dignified treatment. In developing such a coordinated health care system, it is the policy of the Commonwealth to foster responsible private operation and ownership of health care facilities, to encourage innovation and continuous development of improved methods of health care and to aid efficient and effective planning using local health systems agencies. It is the intent of the General Assembly that the Department of Health foster a sound health care system which provides for quality care at appropriate health care facilities throughout the Commonwealth."

464

The Superior Court in *Cabiroy v. Scipione,* 767 A.2d 1078 (Pa. Super. 2001), discussed the concept of negligence per se and held that it is the plaintiff's burden to establish that the purpose of the particular statute is to protect the interest of a group of individuals as opposed to the general public, and whether the statute clearly applies to the conduct of the defendant, citing *Wagner, supra.* *Cabiroy* sought to enforce the federal standards of the Food and Drug Administration against a defendant physician arising out of that physician's treatment of the plaintiff by injection of liquid silicone. In analyzing the claim on appeal and remanding to the trial court for a new trial on the issue of negligence per se, the court reiterated the principles set forth in *Wagner* and other cases holding "[t]he doctrine of per se liability does not create an independent basis of tort liability but rather establishes, by reference to a statutory scheme, the standard of care appropriate to the underlying tort." *Cabiroy, supra* at 1082.

The *Wagner* court also relates that negligence per se is also recognized in the Restatement (Second) of Torts §286:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part,

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

However, *Wagner* holds: "Negligence per se does not apply where the purpose of the statute or regulation is to secure the individual's enjoyment of rights or privileges to which they are entitled only as members of the public." Pa. Suggested Standard Civil Jury Instruction, 2nd ed., vol. 1, §3.30.

Defendant cites *Chalfin v. Beverly Enterprise Inc.,* 741 F. Supp. 1162 (E.D. Pa. 1989), for the proposition that failure to comply with the federal and state regulations is neither per se negligence nor evidence of negligence. However, *Chalfin, supra,* appears to have been overruled or at least distinguished by *McCain v. Beverly Health and Rehabilitation Services Inc. t/a Phoenixville Manor,* (2002 WL 1565526, E.D. Pa.). In extending the protections of OBRA to the plaintiff's decedent against a nursing home, the *McCain* court in attempting to predict how Pennsylvania state courts would react to the same issue sub judice stated: "Courts in Pennsylvania have recognized that the absence of a private cause of action in a statutory scheme is an indicator that the statute did not contemplate enforcement of an individual harm. However, it is just an indicator or a factor to consider and does not necessarily preclude the statute's use as a basis of a claim of negligence per se. A statute may still be used as a basis for a negligence per se claim when it is clear that, despite the absence of a private right of action, the policy of the statute will be furthered by such a claim because its purpose is to protect a particular group of individuals." The *McCain* court then reviewed section 286 of Restatement (Second) of Torts requirements

and held that "A nursing home resident, comes within the older person protections intended by OBRA and the Older Adult Protective Services Act (OAPSA), 35 P.S. §§10225.302, 10225.303, 10225.309 and 28 Pa. Code §§211.10, 211.11 and 211.12 and the regulations set forth in 42 C.F.R. §483. Moreover the statutes and regulations are directed at least in part, to obviate the specific kind of harm which was alleged to have been sustained: 'pressure sores.' 28 Pa. Code §211.10." The court then dismissed the objection lodged by the nursing home, and allowed the plaintiff's decedent to pursue the negligence action where plaintiff alleged her mother had died from pressure sores developed while a resident at the defendant nursing home over a period in excess of four years.

In plaintiff's amended complaint, paragraph 72 reads as follows: "Although the statutes and regulations contained in the paragraph below do not necessarily provide a private cause of action, decedent was a member of a class of nursing home residents that the statutes and regulations were designed to protect. The statutes and regulations do establish a minimal standard of care relevant to nursing facilities licensed by the Commonwealth of Pennsylvania of which defendant is one." By this averment it is clear that plaintiff is not attempting to impart a private cause of action. Plaintiff then has the burden of showing that the statute would be furthered by such a claim because its purpose is to protect a particular group of individuals. Plaintiff correctly directs the court's attention to this same issue having been addressed by Dauphin County in *Wheeler v. Beverly Enterprises,* no. 6011-2001, 10/25/02 (Dauphin Cty. 2002), *Diggs v. Susquehanna Center for Nursing and Rehabilitation,* 35

D.&C.4th 373 (Dauphin Cty. 1996), and Northampton County designated as the "*Griffith*" decision with no number and term given. This is an issue of first impression for our court. All three of these cases cite *McCain, supra,* and section 286 Restatement (Second) of Torts for the proposition that the plaintiff has sufficiently stated facts to allow a negligence per se action to proceed past demurrer and into the discovery stage at the same time reserving the right to review the matter further after discovery is completed upon appropriate motion.

This court's research, however, finds the opinion of Judge Dobson in *Goda v. White Cliff Nursing Home,* (no. 2002-1917 Mercer Cty., May 2003), to be on point. Judge Dobson held that OBRA was enacted "to improve the quality of care for Medicaid-eligible nursing home residents, and either to bring substandard facilities into compliance with Medicaid quality of care requirements or to exclude them from the program." The court found that Mrs. Goda was a Medicaid recipient and a nursing home resident for which OBRA was intended to protect pursuant to the Restatement (Second) of Torts §286 analysis. However, Judge Dobson held "the only regulation alleged in the amended complaint that satisfies the first two elements of section 286 is 42 C.F.R. §483.250 which provides 'the facility must provide each resident with sufficient fluid intake to maintain proper hydration and health.' "

Judge Dobson further held: "The remainder of the OBRA provisions and regulations cited in the amended complaint may not be used to support a cause of action for negligence per se. These various provisions and regulations set forth goals for a nursing home to attain. For

example, under 42 C.F.R. §483.25(c)(1) a facility must ensure that a resident who enters the facility without pressure sores does not develop pressure sores and under 42 C.F.R. §483.65 a facility must establish and maintain an infection control program. The court believes that the defendants' failure to develop policies and procedures to attain the goals set forth in these provisions and regulations does not breach the requisite standard of care to establish a negligence claim, as a result Goda cannot use these provisions to maintain a cause of action for negligence per se. With respect to the issue of whether Goda can base his negligence per se claim upon PHCFA, this court concludes that PHCFA was not intended to protect a particular class of individuals. Therefore, Goda cannot base his negligence per se claim on this statute."

We also hold that the intent of PHCFA was to have the Department of Health implement a system to enhance the delivery of health care services to promote public health. PHCFA does not apply to a particular class of individuals but instead to the general public. As such, the statute and the regulations promulgated thereunder as more fully set forth in 28 Pa. Code §201.1 et seq. do not meet the Restatement (Second) of Torts §286 analysis thereby precluding plaintiff from using the PHCFA regulations as a basis for the negligence per se claim. However, OBRA, in our analysis, was enacted to protect the interests of nursing home residents whether eligible for or receiving Medicaid or Medicare. The plaintiff's decedent's eligibility for Medicare or Medicaid is irrelevant for the practical effect of OBRA and indeed its intent is to improve the standard of care in nursing homes generally. We hold further that the regulations cited in

the amended complaint appear to this court to have set goals to be attained by long-term facilities such as the defendant facility rather than as exact standards of care with the notable exception of 42 C.F.R. §483.25(j) which provides "the facility must provide each resident with sufficient fluid intake to maintain proper hydration and health." Accordingly, we sustain the defendant's demurrer to plaintiff's use of the aforementioned regulations as negligence per se except for 42 C.F.R. §483.25(j). That is not to say, however, that the plaintiff shall be precluded from utilizing the principles enunciated in the federal regulations in attempting to prove that the defendant failed to conform to the standard of conduct that would be expected of a nursing home for the protection of its residents against unreasonable risks, and the failure on the defendant's part to conform to this standard under general principles of negligence as opposed to negligence per se. A failure to comply with the aforementioned regulations even though not negligence per se may constitute some evidence of negligence. See *Brogley v. Chambersburg Engineering Co.,* 306 Pa. Super. 316, 452 A.2d 743 (1982), and *Wood v. Smith,* 343 Pa. Super. 547, 495 A.2d 601 (1985).

## II. LACK OF SPECIFICITY

Pa.R.C.P. 1028(a)(3) provides that a party may file a preliminary objection for "insufficient specificity in a pleading." Pa.R.C.P. 1019(a) requires plaintiffs to plead the material facts that support the claims. A complaint is sufficiently specific if it provides the defendant with enough facts to enable the defendant to frame a proper answer and prepare a defense. *Commonwealth ex rel. Milk*

*Marketing Bd. v. Sunnybrook Dairies Inc.,* 29 Pa. Commw. 210, 370 A.2d 765 (1977). Plaintiff's averments that the defendant's "failure to provide a sanitary and safe environment" and "such other standard of care breaches as discovery may reveal" as set forth in paragraph 54 p and y violate the aforementioned rule and are hereby stricken with plaintiff having 30 days to file a more specific complaint.

## III. CORPORATE NEGLIGENCE

Our court has reviewed the issue of corporate negligence, its history and applicability to hospitals and inapplicability to a physician group practice limiting itself to medical care and treatment related to obstetrics and gynecology. However, this issue of extending corporate liability to a nursing home has not been addressed by our courts of common pleas, the Superior or the Supreme Court of Pennsylvania. In *Kendricks v. Zimmerman,* no. S1351-02 Schuylkill County, Judge Stine relates the progression of the theory of corporate negligence in the health care field:

"The theory of health care corporate negligence was first adopted in Pennsylvania in the case of *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991). Under the doctrine of corporate negligence, a hospital owes a direct duty to patients to ensure their safety and well-being. *Id.* at 339, 591 A.2d at 707. The duties owed by a hospital to a patient are divided into four categories:

"(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment . . .;

"(2) a duty to select and retain only competent physicians . . .;

"(3) a duty to oversee all persons who practice medicine within its walls as to patient care . . .; and

"(4) a duty to formulate, adopt and enforce adequate rules and policies to insure quality care for the patients." *Id.* (citations omitted)

"In 1998, the Superior Court extended corporate negligence to health maintenance organizations (HMOs), recognizing the role HMOs play in providing total health care to their patients. *Shannon v. McNulty,* 718 A.2d 828, 835 (Pa. Super. 1998). Although the court found that HMOs do not specifically practice medicine, HMOs are involved in the daily decision-making which affects patient care, such as limiting the length of hospital stays, restricting access to specialists, restricting access to therapy, or preventing emergency room care. *Id.* The Superior Court stated, '[w]e see no reason why the duties applicable to hospitals should not be equally applicable to an HMO when that HMO is performing the same or similar functions of a hospital.' *Id.* at 836. The appellate courts did not intend to extend corporate negligence responsibility to a physician group practice limiting itself to medical care and treatment related to obstetrics and gynecology. *Raspaldo v. Sacred Heart Hospital,* 54 D.&C.4th 432, 436 (Lehigh Cty. 2000)."

In holding that corporate negligence did not extend to a physician group under the circumstances of *Kendricks, supra,* Judge Stine describes the salient features to be utilized in determining the applicability of corporate negligence:

"(1) whether the plaintiff was restricted in plaintiff's choice of plaintiff's use of the physician and/or the physician group;

"(2) whether the defendant's practice was more akin to a total health care institution such as a hospital as opposed to a physician group practice limited to a specific area of medicine."

The Eastern District Court of Pennsylvania also reviews the history and the doctrine of corporate negligence as established in *Thompson, supra,* in *Milan v. American Vision Center,* 34 F. Supp.2d 279 (1998). The District Court predicted that under Pennsylvania law the doctrine of corporate negligence did not apply to an optometrist's office as the corporate employer of the defendant optometrist. As in Judge Stine's analysis, the *Milan* court opines that in extending corporate negligence to other health care professionals, the salient features are: (1) whether the health care corporation "plays a central role in the total health care of their patients"; (2) whether the patient is "constrained in her health care choices by the defendant"; (3) whether the patient is "given little or no say so in the stewardship of their care"; and (4) whether the defendant "involves themselves daily in decisions affecting their subscribers medical care." The court concluded that optometrist's offices play no gate keeping role in the total health care of its patients. "Like doctors' offices in general, a patient entering an optometrist's office does not forfeit legally or practically the ability to turn elsewhere for medical care. A hospital practically constrains a patient's choice by inducing the patient to rely on its comprehensive services in times when the patient's ability to make choices will be compromised." Furthermore, the court notes that "a visit to an optometrist's office generally does not require a pa-

tient to commit to a single corporate health care provider as a matter of medical necessity."

In *Dontonville v. Jefferson Health System,* 2002 W.L. 59318 (E.D. Pa. 2002), the Eastern District Court, in reviewing the concept of corporate negligence's applicability to a corporate health system including a hospital and physicians' group as corporate entities, allowed the action to proceed, citing a state court of common pleas' decision in *Oven v. Pascucci,* 46 D.&C.4th 506, 512 (Lacka. Cty. 2000), for the holding that corporate negligence is an evolving doctrine under Pennsylvania law, which theory is based upon the systemic or institutional negligence of the defendant itself rather than the conduct of individual employees. Of note, is the Superior Court's nonprecedential memorandum decision in *Stevens v. Pacopis and Ameriplan USA Dental Care,* per Justices Stevens, Olszewski and Beck, PICS case no. 03-1828 (Pa. Super. 2003), wherein this Superior Court panel held that the defendant discount dental service provider was not liable for the dental negligence of Dr. Pacopis under the theory of corporate negligence because of its not evidencing the characteristics of a health maintenance organization.

All of the common pleas court decisions that we reviewed in the negligence per se section of this opinion dismiss the preliminary objections with regards to the plaintiffs' assertion of corporate liability against the respective nursing homes and allow the suit to proceed on this theory through discovery. Likewise, we are constrained to dismiss the preliminary objection as to corporate negligence. The plaintiff has pleaded sufficient facts which, if believed, would entitle the plaintiff to re-

lief under the corporate negligence theory. The plaintiff avers that the defendant in effect constrained the plaintiff's choice by inducing the plaintiff to rely on the defendant's comprehensive nursing home services when the plaintiff's ability to make choices was potentially compromised, and the defendant is more akin to a total health care facility such as a hospital where the defendant involves itself daily in the decisions affecting the resident's general comprehensive care. The defendant's preliminary objection to corporate liability and lack of specificity are dismissed.

## IV. PUNITIVE DAMAGES

We hold, as plaintiff contends, that the second amended complaint contains sufficient facts to state a claim for punitive damages under the survival action. Plaintiff notes that the recent Medical Care Availability and Reduction of Error Act (MCARE Act) enacted March 20, 2002, recognizes that punitive damages may be imposed against "health care providers" for willful or wanton conduct or reckless indifference to the rights of others. 40 Pa.C.S. §1303.505. This standard includes reckless conduct where the actor knows, or has reason to know, of facts which create a high degree of risk of physical harm to another and deliberately proceeds to act, or fails to act, or exhibits a conscious disregard of, or indifference to, that risk. The Act specifically includes "nursing home" within the definition of health care provider. Section 1301.503. The punitive damage provisions of MCARE concerning nursing homes represent the union of existing common and statutory law. Existing case law, therefore, is instructive in addressing this issue.

Pennsylvania recognizes punitive damage awards in appropriate cases. Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment, and the like, which constitute ordinary negligence. Restatement (Second) of Torts §908, comment (b). It is incumbent on plaintiff to plead facts amounting to outrageous conduct, *i.e.,* reckless indifference to the interest of others or wanton misconduct on the part of the defendant in order to support a claim for punitive damages. *Smith v. Brown,* 283 Pa. Super. 116, 423 A.2d 743 (1980). The claim requires more than negligence, however gross. The Supreme Court in *Kasanovich v. George,* 348 Pa. 199, 203, 34 A.2d 543 (1943), described wanton misconduct as: "something different from negligence however gross,— different not merely in degree but in kind, and evincing a different state of mind on the part of the tort-feasor." Since the purpose of punitive damages is not compensation of a plaintiff but punishment of the defendant and deterrence, the damages can be awarded only for conduct involving some element of outrage.

In Count IV plaintiff seeks punitive damages in the wrongful death action. Plaintiff contends that although the Wrongful Death Act does not mention "punitive damages," it specifically allows for "other damages." 42 Pa.C.S. §8301(c). Plaintiff also notes that the MCARE Act specifically states that: "a person who has sustained injury or death as a result of medical negligence by a health care provider must be afforded a prompt determination and fair compensation." 42 Pa.C.S. §1303.102 (4). This is contradicted by the decision in *Walsh v. Strenz,* 63 F. Supp.2d 548 (M.D. Pa. 1999), which holds that there is no statutory authority for punitive damages in

wrongful death actions. Moreover, although the amendments to the Health Care Service Malpractice Act specifically allow for punitive damages in all medical malpractice cases, and the MCARE Act contains specific punitive damages provisions, wrongful death actions are excepted.

The purpose of Pennsylvania's wrongful death statute is to compensate enumerated relatives for pecuniary loss in the form of lost earnings occasioned by death, as well as for services the decedent would have performed for the surviving family members. 42 Pa.C.S. §8301. The case of *Walsh v. Strenz, supra,* discusses, at length, the development of the law of wrongful death in Pennsylvania and the appropriate damage claims. Damages recoverable in a survival action include decedent's pain and suffering, loss of gross earnings from date of injury until death, and loss of earning power, less personal maintenance expenses from time of death through decedent's estimated working life span. 42 Pa.C.S. §8302. In comparison, damages recoverable in a wrongful death action have been limited to "pecuniary loss" of the enumerated survivors, as well as certain designated damages, not including punitive damages. *Walsh v. Strenz, supra* at 552.

Plaintiff contends that the legislature intended to provide for punitive damages in cases of death by reason of medical malpractice under amendments to the Health Care Service Malpractice Act and subsequently in passing the MCARE Act. No amendments, however, have been made to the Wrongful Death Act, *supra,* and this we find controlling. Therefore, the defendant's fourth preliminary objection to punitive damages as asserted via the wrongful death action is granted, stricken from

the complaint, and shall not be averred in the plaintiff's third amended complaint.

Accordingly, we enter the foregoing order.

### ORDER

And now, December 12, 2003, upon consideration of the preliminary objections filed on behalf of defendant, HCR Manor Care Inc. t/a Manor Care of Pottsville, and the supporting briefs to the plaintiff's second amended complaint, it is hereby ordered and decreed that the preliminary objections are sustained in part and denied in part as follows:

(1) the demurrer to Count II dealing with negligence per se is sustained and Count II negligence per se is stricken except as to plaintiff's averment of the standard set forth in 42 C.F.R. §483.25(j);

(2) the motion to strike for lack of specificity is sustained and paragraphs 54 p and y are stricken with leave to amend;

(3) the demurrer to Count III concerning corporate liability is overruled and dismissed;

(4) the demurrer to plaintiff's request for punitive damages in Count IV concerning wrongful death is sustained and the plaintiff's request for punitive damages in the wrongful death action is stricken; and,

(5) the demurrer to Count V pertaining to plaintiff's request for punitive damages in the survival action is overruled and dismissed. Plaintiff shall have 30 days from the date of this order to file a third amended complaint.