# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOAN DONOFRIO, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N21C-07-122 MAA |
| | ) | |
| v. | ) | |
| | ) | |
| PENINSULA HEALTHCARE | ) | |
| SERVICES, LLC, a Delaware Limited | ) | |
| Liability Company, ONIX GROUP, | ) | |
| LLC, a Delaware Limited Liability | ) | |
| Company, and LONG TERM CARE | ) | |
| CORP., a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  March 4, 2022
Decided:  April 8, 2022

*Upon Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Delaware*
*Superior Court Civil Rule 12(b)(1)*
**GRANTED in part.**

## <u>MEMORANDUM OPINION</u>

Benjamin A. Schwartz, Esquire (Argued), of SCHWARTZ AND SCHWARTZ, Dover, Delaware, Attorney for Plaintiff.

Maria R. Granaudo Gesty, Esquire, of BURNS WHITE LLC, Wilmington, Delaware (Argued), Attorney for Defendants.

**Adams, J.**

Plaintiff Joan Donofrio ("Plaintiff") brought a medical malpractice action against Defendants Peninsula Healthcare Services, LLC, Onix Group, LLC, and Long Term Care Corp. (collectively, "Defendants") for injuries sustained at Defendants' long-term care facility. Defendants moved to dismiss under Superior Court Civil Rule 12(b)(1) for lack of subject matter jurisdiction pursuant to an agreement to arbitrate. Plaintiff contends that the arbitration agreement is invalid and unenforceable.

For the reasons stated below, the Court holds there is a valid and enforceable arbitration agreement covering Plaintiff's claims. The Court, therefore, stays the case pending the outcome of arbitration.

## II. BACKGROUND

### A.  Relevant Facts

Plaintiff was admitted to Cadia Rehabilitation Renaissance (the "Facility") on November 30, 2019 for physical therapy from a hip fracture. The Facility is owned and operated by Defendants.

Upon admission to the facility, Plaintiff's daughter, Chris Johnson, accompanied her. The Facility presented Plaintiff with admission documents. Plaintiff signed above the "Resident" line, and Chris signed above the "Responsible Party" line.[1]

---

[1]    Pl.'s Resp. Br. Ex. A.

Two days later, on December 2, 2019, the Facility presented Plaintiff with additional admission documents. These documents included the "Receipt of Admission Documentation Acknowledgement Form,"[2] "Authorization for Services,"[3] "Consent for Treatment,"[4] "Advance Directives,"[5] "Authorization for Release,"[6] and a "Binding Arbitration Agreement"[7] (the "Agreement"). Plaintiff signed each document. Plaintiff's Resident Sheet and Advanced Directives form indicated that Plaintiff was her own responsible party and that she did not have a power of attorney for healthcare.[8] Plaintiff's counsel confirmed at the Motion to Dismiss hearing on February 1, 2022 that Plaintiff did not have a power of attorney when she signed the Agreement.[9]

The Agreement provides, in part:

> **ANY, DISPUTE, DISAGREEMENT, CONTROVERSY, DEMAND, OR CLAIM, INCLUDING BUT NOT LIMITED TO, LEGAL CLAIMS,** arising between them regarding any service or health care provided to Resident by Facility, even if such dispute arises after the Resident's stay at the Facility has ended shall be submitted to **BINDING ARBITRATION** and **EXCLUSIVELY RESOLVED BY ARBITRATION**, except as otherwise set forth below.[10]

---

[2]    Defs.' Br. Ex. B.
[3]    Defs.' Br. Ex. E.
[4]    Defs.' Br. Ex. F.
[5]    Defs.' Br. Ex. G.
[6]    Defs.' Br. Ex. I.
[7]    Defs.' Br. Ex. A.
[8]    Defs.' Br. Ex. D, G.
[9]    Transcript of Oral Argument at 41:7-11.
[10]   Defs.' Br. Ex. A.

On December 10, 2019, Plaintiff fell and sustained injuries at the Facility. Plaintiff then brought a medical negligence action against Defendants for those injuries.

**B.    Procedural Posture**

Plaintiff commenced this action by filing a Complaint against Defendants on July 16, 2021.  Defendants filed their Answer on September 13, 2021 and included as an affirmative defense that the Court lacked subject matter jurisdiction pursuant to a valid and enforceable arbitration agreement.  Defendants also moved for review of Plaintiff's Affidavit of Merit to determine whether it complied with 18 *Del. C.* § 6853.

On September 20, 2021, Defendants filed a Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(1) for lack of subject matter jurisdiction. Defendants filed their brief in support of the motion on October 28, 2021.  Plaintiff filed their opposition to the Motion to Dismiss on November 29, 2021.  The Court heard oral argument on the motion on February 2, 2022.[11]

---

[11]    On March 4, 2022, Plaintiff filed a letter addressing the recently enacted *Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021*. Plaintiff argued that the new law conflicts with the federal presumption in favor of arbitration.  The new law, however, is irrelevant to the case at bar because the case does not involve allegations of sexual assault or sexual harassment.  The federal law also does not impact Delaware's history of public policy favoring arbitration.  *See* D.I. 29.

## IV. STANDARD OF REVIEW

Pursuant to Superior Court Civil Rule 12(b)(1), the Court must dismiss an action if it appears from the record that the Court does not have jurisdiction over the claims.[12] The burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention.[13] In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court may consider documents outside of the pleadings[14] and "need not accept Plaintiff's factual allegations as true."[15]

Delaware courts lack subject matter jurisdiction over claims the parties contractually agreed to arbitrate.[16] Although this Court cannot compel arbitration, the Court can determine whether an enforceable arbitration agreement exists for

---

[12]     Super. Ct. Civil R. 12(b)(1).

[13]     *Sun Life Assurance Co. of Canada - U.S. Operations Hldgs., Inc. v. Gp. One Thousand One, LLC*, 206 A.3d 261, 265 (Del. Super. 2019) (citing *Appriva Shareholder Litigation Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007)).

[14]     *Dewey v. Amazon.com, Inc.*, 2019 WL 3384769, at *2 (Del. Super. July 25, 2019) (citing *NAMA Hldgs., LLC v. Related World Market Center, LLC*, 922 A.2d 417, 429 n. 15 (Del. Ch. 2007)).

[15]     *Appriva Shareholder Litigation Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1285 n.14 (Del. 2007) (quoting *Philips v. County of Bucks*, 1999 WL 600541, at *1 (E.D. Pa. Aug. 9, 1999) ("Unlike the standards employed in Rule 12(b)(6) analysis, the guidelines for the Court's review of a Rule 12(b)(1) motion are far more demanding of the non-movant. The burden is on the Plaintiffs to prove jurisdiction exists. Further, the Court need not accept Plaintiffs factual allegations as true and is free to consider facts not alleged in the complaint.")).

[16]     *West IP Commc'ns, Inc. v. Xactly Corp.*, 2014 WL 3032270, at *5 (citing *Aquila of Del., Inc. v. Wilmington Trust Co.*, 2011 WL 4908406, at *1 (Del. Super. Oct. 10, 2011) (internal quotations omitted)).

purposes of subject matter jurisdiction.[17] Delaware's public policy has a strong presumption in favor of arbitration.[18] This policy aligns with federal policy favoring arbitration as evinced in the Federal Arbitration Act ("FAA"). Accordingly, any doubt as to arbitrability should be resolved in favor of arbitration.[19]

## V. DISCUSSION

To resolve Defendants' motion to dismiss, the Court must engage in a three-step inquiry. First, the Court must determine whether this Court or an arbitrator should decide substantive arbitrability.[20] Second, the Court must determine whether a valid and enforceable arbitration agreement exists.[21] Finally, the Court must determine whether Plaintiff's claim falls within the scope of the arbitration agreement.[22]

---

[17] *Jones v. 810 Broom St. Operations*, 2014 WL 1347746, at \*1 (Del. Super. June 25, 2014).

[18] *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010) (citing *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998); *NAMA Hldgs.*, 922 A.2d at 429 ("[T]he strong public policy in favor of arbitration embodied in federal law is given equal respect in this State…"); *Dewey*, 2019 WL 3384769, at \*3 ("The FAA evinces a strong federal policy favoring enforcement of arbitration agreement.").

[19] *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002).

[20] *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1119 (Del. Ch. 2010).

[21] *Parfi*, 817 A.2d at 155.

[22] *Id.*

## A. The Court Decides Substantive Arbitrability.

As a threshold matter, the Court must determine whether substantive arbitrability should be decided by the Court or an arbitrator.[23] "The question of whether the parties agreed to arbitrate is generally one for the courts to decide and not for the arbitrators."[24] It is presumed that substantive arbitrability is an issue for judicial determination unless there is "clear and unmistakable evidence" to the contrary.[25]

The "clear and unmistakable" standard can be satisfied by an express provision that substantive arbitrability will be determined by an arbitrator.[26] Absent such an express provision, the Supreme Court of Delaware in *James & Jackson, LLC v. Willie Gary, LLC*[27] articulated a two-pronged test for determining whether the "clear and unmistakable" standard is satisfied: 1) a statement that generally refers all disputes to arbitration; and 2) a reference to a set of rules, such as the American Arbitration Association ("AAA"), that would empower arbitrators to decide arbitrability.[28]

---

[23]   *West IP Commc'ns, Inc.*, 2014 WL 3032270, at *6.
[24]   *DMS Properties-First, Inc. v. P.W. Scott Assocs., Inc.*, 748 A.2d 389, 392 (Del. 2000).
[25]   *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006) (quoting *First Options Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).
[26]   *GTSI Corp.*, 10 A.3d at 1119.
[27]   906 a.2D 76 (Del. 2006).
[28]   *Julian v. Julian*, 2009 WL 2937121, at *5 (Del. Ch. 2009).

Here, the first prong is met because the Agreement generally refers all disputes to arbitration. The Agreement states that "any dispute, disagreement, controversy, demand, or claim, including but not limited to legal claims, arising between them regarding any service or health care provided…shall be submitted to binding arbitration and exclusively resolved by arbitration." Delaware courts have found similar language to satisfy the first prong of the *Willie Gary* test.[29]

The second prong, however, is not met. The Agreement does not reference any rules empowering an arbitrator to decide arbitrability. The Agreement, therefore, does not meet the *Willie Gary* test, and this Court may determine substantive arbitrability.[30]

---

[29]    *See Legenda Natural Gas II Hldgs., LP v. Hargis*, 2012 WL 4481303, at *5 (Del. Ch. Sept. 28, 2012) ("Here, the language 'any dispute, controversy or claim arising out of or relating to this [Employment] Agreement' generally refers all disputes to arbitration."); *Orix LF, LP v. Inscap Asset Mgmt., LLC*, 2010 WL 1463404, at *7 (Del. Ch. Apr. 13, 2010) ("Delaware courts have found the use of both 'arising out of' and 'relating to' language in an arbitration provision to be a broad mandate.").

[30]    Though Delaware courts have expanded the *Willie Gary* test to include a third prong, it is inapplicable here. The third prong requires the Court to determine whether a non-frivolous argument in favor of substantive arbitrability exists. If the first two prongs are satisfied and there is a non-frivolous argument for substantive arbitrability, the Court must defer to the arbitrator. If, however, there are no non-frivolous arguments, even if the first two prongs are satisfied, the Court may determine substantive arbitrability. *Riley v. Brocade Commc'ns Sys., Inc.*, 2014 WL 1813285, at *1 (Del. Ch. May 6, 2014). The Court here finds that the Agreement does not satisfy the one of the initial prongs of the *Willie Gary* test. Thus, the Court will not address the third prong.

**B.  There is a Valid and Enforceable Arbitration Agreement.[31]**

The Agreement provides that the Federal Arbitration Act ("FAA") governs.[32] The FAA states that "[a] written provision…to settle by arbitration a controversy… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[33]  Under the FAA, courts apply ordinary state-law principles governing contract formation when determining whether a valid arbitration agreement exists.[34]  Arbitration is a "creature of contract"[35] and a party "cannot be forced arbitrate a claim absent a contractual or equitable duty to do so."[36]  As the party seeking to enforce an arbitration agreement, Defendants have the burden of establishing a valid arbitration agreement.[37]

---

[31]  This Court has recently upheld an identical arbitration agreement in *Skinner v. Peninsula Healthcare Services, LLC*, 2021 WL 77824, at *3 (Del. Super. Mar. 1, 2021).  Though Skinner was a wrongful death claim, the Court specifically addressed the threshold matter of whether "a valid binding arbitration agreement exists."  The court held that the arbitration agreement, identical to the one here, was enforceable.

[32]  Defs.' Br. Ex. B.

[33]  9 U.S.C. § 2.

[34]  *Skinner*, 2021 WL 778324, at *3 (citing *First Options Chi.*, 514 U.S. at 944); *see also AffiniPay, LLC v. West*, 2021 WL 4262225, at *5 (Del. Ch. Sept. 17, 2021).

[35]  *Aquila of Del., Inc.*, 2011 WL 1487060, at *1.

[36]  *Behm v. Am. Intl. Group, Inc.*, 2013 WL 3981663, at *5 (Del. Super. July 30, 2013) (citing *NAMA Hldgs.*, 922 A.2d at 430).

[37]  *Skinner*, 2021 WL 778324, at *3 (citing *First Options Chi.*, 514 U.S. 938).

### i. The Agreement is supported by consideration.

Under Delaware law, a valid contract requires mutual assent to definite terms supported by consideration.[38] Courts determine mutual assent using an objective standard based on overt manifestations of assent.[39] "Where the putative contract is in the form of a signed writing, that document generally offers the most powerful and persuasive evidence of the parties' intent to be bound."[40]

Here, Plaintiff contends that the Agreement fails for lack of consideration. The Restatement (Second) of Contracts provides that the exchange of reciprocal promises constitutes consideration.[41] Consistent with that principle, courts have held that mutual promises to arbitrate by both parties is sufficient consideration.[42]

In the Agreement, both parties promise to arbitrate disputes. Specifically, the Agreement states:

> "Cadia Healthcare Renaissance ("Facility") and Joan Donofrio ("Resident") understand and agree that **ANY DISPUTE, DISAGREEMENT, CONTROVERSY, DEMAND, OR CLAIM, INCLUDING, BUT NOT LIMITED TO, LEGAL CLAIMS,** arising between them regarding any service or health care provided to Resident by Facility…shall be submitted to **BINDING ARBITRATION** and **EXCLUSIVELY RESOLVED BY ARBITRATION**, except as

---

[38] *Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018).

[39] *Id.* at 1229-30.

[40] *Eagle Force*, 187 A.3d at 1230 (citing *Seiler v. Levitz Furniture Co. E. Region*, 367 A.2d 999, 1005 (Del. 1976)).

[41] Restatement (Second) of Contracts § 71.

[42] *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.").

10

otherwise set forth below. This Agreement does not apply to (a) collection actions instituted by the Facility, (b) Resident's due process rights before state or federal regulatory or administrative agencies."

The Agreement binds both parties to arbitration. Thus, the mutual promises exchanged constitutes sufficient consideration.

Plaintiff contends that, although both parties agreed to arbitrate, Defendants carved out an exception for themselves in the Agreement which functionally unshackles them from binding arbitration. Specifically, Plaintiff refers to the language in the Agreement that provides, "[t]his Agreement does not apply to (a) collection actions instituted by the Facility." As a result of this exception, Plaintiff claims there is only Plaintiff's unilateral promise to arbitrate, not a mutual one.

The Court disagrees. Though the Agreement provides an exception for the Facility, the exception is a narrow one and compels the Facility to arbitration for all claims other than a collection action. Other courts interpreting arbitration agreements have held that parties who agree to arbitrate may exclude certain claims, such as collection actions, from the scope of the arbitration agreement.[43] The

---

[43] *See Riley v. Premier Healthcare Management, LLC*, 255 A.3d 1282 (Pa. Super. Ct. May 28, 2021) (TABLE) (holding that the exclusion of collection actions from the arbitration agreement was permissible); *Salley v. Option One Mortg. Corp.*, 592 Pa. 323 (Pa. 2007) ("parties who agree to arbitrate some claims may exclude others from the scope of the arbitration agreement.").

Agreement also provides an arbitration exception for the Plaintiff in the very next clause.[44]

Mutual promises do not require equal promises to constitute consideration. Absent fraud or unconscionability, contract law does not inquire into consideration's value nor equivalency.[45] Plaintiff here is not arguing fraud or unconscionability. Consistent with Delaware's public policy interest in contractual freedom, parties are free to set and agree to their own terms. Thus, the Court holds that the Agreement is supported by valid consideration by exchanging reciprocal promises.

### ii. *Plaintiff possessed capacity when she executed the Agreement.*

Plaintiff also claims that she does not recall signing the admission documents. Plaintiff does not deny that she signed the Agreement, nor does Plaintiff contest the authenticity of her signature. Rather, Plaintiff claims incapacity. Plaintiff alleges that because she was on painkillers when she signed the Agreement, she was unable to understand the significance of the document.

---

[44] Defs.' Br. Ex. A. "This Agreement does not apply to (a) collection actions instituted by the Facility, (b) Resident's due process rights before state or federal regulatory or administrative agencies."

[45] Restatement (Second) of Contracts §79.

Under Delaware law, adults are presumed to possess capacity.[46] The party alleging incapacity bears the burden of proving otherwise.[47] To prove incapacity, Plaintiff must prove that she was unable to understand in a reasonable manner the nature and consequences of the transaction, or that she was unable to act in a reasonable manner in relation to the transaction and the other party had reason to know of this condition.[48] "A party's capacity to enter into a contract is often best judged by the observations and impressions of parties who witnessed the complaining party's actions."[49]

To prove incapacity, Plaintiff claims that she was "on strong painkillers…on the day in question."[50] Plaintiff did not identify the painkillers nor their effects that would render Plaintiff incapacitated. Defendants' Reply Brief clarifies that Plaintiff was administered Tramadol HCl 50mg pain medication on December 2, 2019.[51] Defendants also assert that Plaintiff was not adjudicated incompetent prior to signing the Agreement, Plaintiff signed several other important documents that day, and Defendants' medical observation notes on the day in question indicate that Plaintiff

---

[46] *Bettis v. Premier Pool & Property Mgmt., LLC*, 2012 WL 4662225, at *2 (Del. Ch. Sept. 26, 2012) (quoting *McAllister v. Schettler*, 521 A.2d 617, 621 (Del. Ch. 1986).
[47] *Id.*
[48] *Barrows v. Bowen*, 1994 WL 198724, at *4 (Del. Ch. 1995).
[49] *Donelson v. Colonial Parking, Inc.*, 2014 WL 4102482, at *2 (Del. Super. July 23, 2014).
[50] Pl.'s Resp. Br. 14.
[51] Defs.' Reply 7.

was "alert and oriented x3" throughout that day, including after she received the pain medication.[52]   Plaintiff's counsel stated at the hearing on the Motion that he was unaware of any medical side effects of Tramadol that would render a patient unable to understand a document.[53]   Plaintiff, therefore, has not met her burden of proving incapacity.

### iii.    *Plaintiff possessed authority when she executed the Agreement.*

Plaintiff also attempts to nullify the Agreement by arguing that Plaintiff lacked authority to execute contracts on her behalf.  Plaintiff claims that Defendants had "actual knowledge" that Plaintiff "relied heavily on the assistance of her daughter in reviewing important documentation" and "accepted that [her daughter] was acting as her mother's Power of Attorney."[54]

The Court finds that Plaintiff did not have a power of attorney and was her own responsible party.  Thus, Plaintiff possessed authority to execute the Agreement on her behalf.  On Plaintiff's "Advance Directives" sheet, executed on December 2, 2019, "none" is written over the space indicating whether Plaintiff had a power of attorney or guardian.[55]   Plaintiff also executed other admission documents on her own behalf, including the "Receipt of Admission Documentation Acknowledgement

---

[52]    *See* Defs.' Reply Ex. C.
[53]    Transcript of Oral Argument at 32:7-10.
[54]    Pl.'s Resp. 14.
[55]    Defs.' Br. Ex. G.  Plaintiff's resident sheet also indicates that Plaintiff is her own responsible party.  Defs.' Br. Ex. D.

Form," "Authorization for Services," "Consent for Treatment," "Advanced Directives" and others.[56] Plaintiff's counsel confirmed at the hearing on the Motion that Plaintiff did not have a power of attorney.[57]

## C. The Arbitration Agreement Covers Plaintiff's claims.

The scope of the Agreement covers Plaintiff's claims. The Agreement states that "any dispute…arising between [the Facility and Plaintiff] regarding any service or health care provided to Resident by Facility…shall be submitted to binding arbitration and exclusively resolved by arbitration."[58] Plaintiff's claims are for injuries and alleged negligence arising from care received at the Facility. Plaintiff's claims, therefore, fall within the scope of the Agreement.

## D. Plaintiff's Remaining Contentions.

Lastly, Plaintiff attempts to void the Agreement by alleging it violates federal regulation 42 C.F.R. § 483.70(n) and that Defendants waived their right to enforce arbitration by actively participating in this litigation.

### i. *Noncompliance with 42 C.F.R. § 483.70 does not render the Agreement unenforceable.*

Plaintiff claims the Agreement fails to comply with federal regulation 42 C.F.R. § 483.70 for nursing and long term-care facilities. The regulation provides

---

[56]    Defs.' Br. Ex. B, E, F, G, I.

[57]    Transcript of Oral Argument at 41:7-11 ("I don't think that [Plaintiff] had her power of attorney.").

[58]    Defs.' Br. Ex. A.

certain requirements that nursing and long-term care facilities must comply with to participate in Medicare and Medicaid. Plaintiff claims that because the Agreement violates provisions in 42 C.F.R. § 483.70(n) governing arbitration agreements, the Agreement is void.

Courts interpreting this regulation have made clear that violations of 42 C.F.R. § 483.70(n) do not void an otherwise valid agreement. The regulation concerns the eligibility of nursing facilities to receive Medicare and Medicaid funding. It does not excuse a party from a contractual obligation, create a private cause of action or standard of care, nor concern enforcement of private contractual disputes.[59] Failure to comply with the regulation does not render an arbitration agreement unenforceable.[60] Rather, it impacts the facility's eligibility for federal subsidies.[61]

---

[59] *BLC Lexington SNF, LLC v. Craig*, 2020 WL 4721240, at *9 (E.D. Ky. Aug. 13, 2020) ("Even if the regulation was in effect at the time, it is not clear that excusing a private party from a contractual obligation is the appropriate remedy; the regulation relates ontly to eligibility for federal funding."); *Riley*, 2021 WL 2287464, at *9; *Fansler v. North American Title Insurance Co.*, 2020 WL 5793750, at *3 (Del. Super. Sept. 29, 2020); *Frantz v. HCR Manor Care Inc.*, 64 Pa. D. & C.4th 457, 467-68 (2003).

[60] *Northport Health Servs. of Arkansas, LLC v. U.S. Dept. of Health and Human Servs.*, 438 F.Supp.3d 956, 966-67 (W.D. Ark.) ("Thus, if the failure to comply with the procedural requirements in [42 C.F.R. § 483.70(n)] were a basis for holding an agreement to arbitrate invalid and unenforceable, the Rule would indeed conflict with the FAA.").

[61] *Id.*

The regulation is enforced through administrative remedies, such as denial of payment or monetary penalties, not by voiding an otherwise valid contract.[62]  Thus, if a facility entered into an arbitration agreement in violation of the regulation, the agreement would still be enforceable, "absent a showing of generally applicable contract defenses" as stated in 9 U.S.C. § 2 of the FAA.[63]

The Court, therefore, does not need to address Plaintiff's arguments regarding 42 C.F.R. § 483.70(n) violations because, even if the Agreement violated certain provisions within the regulation, such violations would not nullify the Agreement.

### ii.    Defendants did not waive their right to enforce the Agreement by "actively participating in litigation."

"A party may waive its right to arbitration by…actively participating in litigation as to an arbitrable claim."[64]  Given the strong public policy favoring arbitration, "waiver is not to be lightly inferred."[65]  A finding of waiver is meant to prevent the "unfairness of allowing a party to litigate while keeping the arbitration arrow in its quiver, only to unleash it when things begin to go badly."[66]  Delaware

---

[62]     *Northport Health Servs. of Arkansas, LLC v. U.S. Dept. of Health and Human Servs.*, 14 F.4th 856, 866 (8th Cir. 2021).

[63]     *Id.*

[64]     *Parfi Hldg.*, 842 A.2d at 1260 n. 39.

[65]     *James Julian, Inc. v. Raytheon Service Co.*, 424 A.2d 665, 668 (Del. Ch. 1980).

[66]     *Margolis Edelstein v. Frontier Mining, et. al.*, C.A. No. 14C-01-217 JAP (Del. Super. June 30, 2017).

courts have found waiver where the party asserting arbitration engaged in litigation for several months or years before invoking arbitration.[67]

Here, Defendants have made no secret of their intent to arbitrate. Defendants raised the arbitration agreement at the earliest opportunity – in their Answer. Even prior to that, Defendants notified Plaintiff via e-mail of their intent to arbitrate pursuant to the Agreement by making a demand for arbitration.[68] Defendants shortly thereafter filed their Motion to Dismiss for lack of subject matter jurisdiction. Defendants maintain they have not engaged in any discovery that they would not be entitled to once the matter is transferred to arbitration. The Court, therefore, finds that Defendants did not waive arbitration.

**E.    The Court Stays the Case Pending the Outcome of Arbitration.**

Plaintiff requests that if the Court finds the Agreement valid, the Court stay the case pending the outcome of arbitration. Defendants take no position on a stay. The FAA provides that where there is an arbitration agreement and on application of one of the parties, the court shall stay the action until arbitration has occurred.[69] Given this provision from the FAA and Plaintiff's request, the Court stays the case pending arbitration.

---

[67] *Id. See also Ballenger v. Applied Digital Solutions, Inc.*, 2002 WL 749162, at *7 (Del. Ch. Apr. 24, 2002).
[68] Defs.' Reply Ex. D.
[69] 9 U.S.C. § 3.

## VI. CONCLUSION

For the reasons stated above, the Court will stay the case pending the outcome of arbitration. **IT IS SO ORDERED.**

*/s/ Meghan A. Adams*

**Meghan A. Adams, Judge**